UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:23-cr-00427-DLF-1 |
|     Plaintiff | : | |
| V. | : | |
| | : | |
| | : | |
| DAN EDWIN WILSON | : | AUGUST 9, 2024 |
|     Defendant | | |

## **DEFENDANT'S SENTENCING MEMORANDUM**

Mr. Wilson is now before the Court as a result of guilty pleas to two sets of offenses: Firearms offenses arising from the Western District of Kentucky: specifically, one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2), and one count of possession of an unregistered firearm, in violation of 26 U.S. Sections 5841, 5861(d) and 5871. PSR, paras, 1, 13. He also entered a plea in an indictment returned in the District of Columbia, specifically, one count of conspiracy to impede or injure an officer, in violation of 18 U.S.C. Section 372. PSR, paras 10, 13. The matters were consolidated for disposition in the District of Columbia. The convictions arise from his participation in a demonstration-turned-riot at the United States Capitol on January 6, 2021, and a search related to an investigation of his participation in that event.

Mr. Wilson harbored a belief, fostered by no less a person than the president of the United States, Donald J. Trump, that the results of the presidential election in November 2020 were fraudulent, in effect that an election had been stolen. He appeared to protest, in the hope that members of Congress would not count the Electoral College votes until a further investigation could take place. He participated in extensive social media chatter prior to the event, communications referring to potential civil war and resistance to the

1

government, communicating with groups well known to the Court, the Oath Keepers and Three Percenters.

He was arrested first in Kentucky on the firearms charges on February 1, 2023, and released on a $10,000 unsecured bond with conditions; he was then arrested on the District of Columbia charges on May 25, 2023 and released on personal recognizance with conditions. PSR, paras, 28, 29. He has been generally compliant with the conditions of his release, but for two positive tests for the use of marijuana. PSR, para. 30.

The United States Probation Office calculates a Total Offense Level of 20 and a criminal history of one, PSR, paras 103, 114, resulting in an estimated guidelines range of 33 months to 41 months. PSR, para 177. The probation office also recommends against imposition of a fine. PSR, para. 164. Mr. Wilson's plea agreement requires that he pay $2,000 in restitution to the Architect of the Capitol. PSR, para. 206.

Mr. Wilson has reviewed the PSR and notes no material errors or omissions.

### I. Guidelines

The United States Sentencing Guidelines are no longer mandatory, they are advisory in nature, and the Court must consider them in imposing a sentence. *United States v. Booker*, 543 U.S. 2220, 245-246 (2005.) The sentencing Court is required to consider the guidelines range, and then consider the factors laid out in 18 United States Code Section 3553(a). It is the Court's responsibility to impose a sentence sufficient, but not greater than necessary, to accomplish the goals of Section 3553(a). *Rita v. United States*, 551 U.S. 338, 347 (2007).

### II. Sentencing Factors

Section 3553(a) requires consideration of the following factors:

- The nature and circumstances of the offense and the history and characteristics of the defendant (subsection (a)(1));

2

- The need for the sentence to reflect the seriousness of the offense, promote respect for the law and to provide just punishment (subsection (a)(2)(A));

- The need for adequate deterrence to criminal conduct (subsection(a)(2)(B));

- The need to protect the public from further crimes by the defendant (subsection (a)(2)(C));

- The effort to assure rehabilitation of the defendant by such services as the Bureau of Prisons may provide (subsection (a)(2)(D)).

### III.    Guidelines Calculation

The sentencing calculation in this case is, by contrast to many, if not most, January 6 sentences, anomalous. That is because the firearms charges in Kentucky drive the sentence to be imposed, PSR, paras 172-177. The offense carrying the highest guideline calculation, a firearms offense, has a Total Offense Level of 22; the January 6 count has a level of 16.

Although the possessory offense regarding firearms drives the sentence, the Government is expected to seek an enhancement of the sentence under USSG Section 3B1.1 and potential upward departures based on USSG Sections 3A1,4, comment 4, USSG Section 5K2.7 (disruption of governmental function), and/or Section 5k2.14.  PSR, para. 178.

Mr. Wilson has yet to see the Government's argument in support of the enhancement or upward departures and cannot respond to an argument he has not seen. He questions the propriety of seeking enhancements for a non-controlling offense, and therefore, by definition, a less serious offense, when the Guidelines calculation are driven by the most serious offense.

In the event the Court considers 3B1.1 and 3B1.2 as to the defendant's conduct on January 6 itself, the defendant urges the Court to reject the Government's expected request for a finding of aggravating factors under 3B1.1, and urges the Court to find mitigation under

3

3B1.2.

There is no dispute that Mr. Wilson used vitriolic speech in the run up to January 6. By virtue of his plea of guilty to the count of conspiring to injure an officer, he has waived any claim that such speech was a mere abstract call for violence at some future date and was therefore protected speech at the time the utterances were made.

Unlike other defendants who engaged in such speech prior to the events of January 6, 2021, he was not charged with seditious conspiracy. Indeed, he was not assessed any points in the Guidelines calculation for being a leader or manager. PSR, para 86. Neither was he assessed additional points for specific offense characteristics related to the conspiracy. PSR, para. 84. (He was assessed an additional six points for offense characteristics on the firearms charge, because he possessed six firearms. (PSR, para 90)

Mr. Wilson contends that application of Section 3B1.1 as an aggravating factor is inappropriate because he was not an organizer, *United States v. Bolden*, 596 F.3d 976 (8th Cir 2010), manager, *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir. 1990), or leader, *United States v. Solario*, 337 F.3d. 580 (6th Cir. 2003), in any criminal activity. He was a participant and a vocal one in vitriolic speech about what could, and perhaps should, happen on January 6, 2021. Yet for all that hyperbole, he was not charged with committing an act of violence against any law enforcement officer. Absent from the three indictments of Mr. Wilson arising out of the District of Columbia is the charge that would have lodged had his speech ripened into actual conduct: 18 U.S.C. Section 111, which supports a 6-point enhancement for an "official victim, under Section 3A1.2. (see, generally, Aggravating and *Mitigating Role Adjustments Primer Sections 3B1.1 and 3 B1.2*, US Sentencing Commission),

(https://www.ussc.gov/sites/default/files/pdf/training/primers/Primer_Role_Adjustmen

4

t.pdf#:~:text=Section%203B1.1%20provides%20for%202-%2C%203-%2C%20and%204-level,or%20was%20otherwise%20extensive%2C%20increase%20by%204%20levels), last accessed August 8, 2024).

On the other hand, Mr. Wilson urges the Court to find mitigation under 3B1.2. He contends that while he was present at the riot and that he did enter the Capitol, he neither engaged in direct destruction of property nor actual violent confrontation with law enforcement agents. These latter factors – destruction of property and actual physical violence – distinguish Mr. Wilson from more active participants and make him substantially less culpable. This is consistent with the approach taken in *United States v. Santos*, 357 F.3d. 136, 142 (1st Cir. 2004) ("less culpable than his coparticipants and to the conspiracy's other participants").

### IV.     Offense Characteristics

There is no question that the protest on January 6, 2021 became a riot with violent features, but to suggest, as the Government has repeatedly in an extraordinarily ambitious campaign of prosecutions, that the events were a threat to democracy itself requiring harsh, even draconian, consequences is overdone. Attempts to castigate Mr. Wilson by repeated reference to the crowd and what other rioters did obscures a fundamental point: people had every right to appear at the Capitol to petition for redress of grievances, even if those grievances were more imagined than real in hindsight. Mr. Wilson did not plan an insurrection. He appeared at a protest and was swept up in events that turned violent. The sentence in this case should reflect the seriousness of Mr. Wilson's offense, not the Government's determination to send a message to the public at large based on the behavior of the group as a whole.

**V.     Mr. Wilson's Characteristics**

Mr. Wilson has had more than his fair share of trouble as a young adult and child. Abused as a child, he spent his early adulthood in and out of the criminal justice system. Yet now, at age 48, he has largely turned his life around. He is a licensed master electrician and gainfully employed. He manages his modest financial affairs responsibly, and is a productive member of society.

Clearly, he ought not to have possessed firearms, and warrants punishment for unlawfully possessing firearms. And his conduct at the Capitol on January 6, 2021 is culpable. It would take a sociologist or more learned scholar than this writer to comprehend just how so many Americans allowed themselves to become persuaded that the 2020 election was stolen, even after scores of attempts to litigate the issue failed in courts across the land. This belief, couple with a long history of resistance to public authority by dissenting groups in the United States – starting with the founders themselves – has created a combustible political culture. Mr. Wilson succumbed to that rhetoric of theft and the romance of popular sovereignty reclaimed. The consequences were a riot that delayed counting of electoral votes one day in January, 2021. The republic itself was not at risk; the day was the sort of day Aristotle warned against when he wrote about the dangers of democracy leading to mob rule and autocracy – entirely foreseeable and, in the end, manageable, in a republic with stable institutions. Our institutions held firm. They remain solid.

Whether Mr. Wilson's dependence on alcohol fueled a particular vulnerability is candidly unknown. PSR, para 143  (consumption of eight to 12 beers per day). One suspects his level of disaffection with mainstream institutions of American political life is best explained by the sense of alienation and estrangement among many working class Americans, as is written about by J.D. Vance, the current Republican vice presidential nominee,  in *Hillbilly*

*Elegy*.

## VI. General Deterrence

The scope and extent of the Government's prosecution of rioters at the Capitol on January 6, 2021, militates against any need for general deterrence as a factor in this sentencing. Press accounts relay that more than 1200 persons have thus far been charged with offenses arising from the hours-long disturbance that day. Indeed, the United States Attorney for the District of Columbia not long ago held a conference at which he proclaimed that there are still more prosecutions to come. Apparently, the investigation of the event is ongoing. If there is an American alive who today believes that a similar riot will be tolerated in the future, that person does not read or listen to the news. Mr. Wilson received the message.

## VII. Specific Deterrence

Although Mr. Wilson has zero criminal history points, he does have an extensive history of involvement with the criminal justice system. PSR, para. 105-120. He has served time in prison. Returning after more than a decade of participation in the economy and gaining a foothold in society will be a serious setback for Mr. Wilson.

Despite the lengthy record as a young adult, it is unlikely that he presents a risk of recidivism. He was caught up in the moment. He has been informed of the nature and operation of the sentencing guidelines and has been stoic in contemplation of the likely consequences of this conviction. Throughout the proceedings, he has been generally compliant with his conditions of release.

Mr. Wilson appreciates the seriousness of the charges. He will address the Court in his own words at the time of sentencing so that the Court can assess for itself his remorse and contrition.

**VIII.   Rehabilitation**

A candid reading of the PSR in this case reflects a deep sense of personal tragedy – Mr. Wilson was abused by multiple father figures; his own father forced him to endure games of Russian Roulette; he spent a considerable period of in his youth in group homes, foster care and other residential and outpatient programs. PSR, Para. 127. The PSR author recommends the following programs for Mr. Wilson during his period of incarceration: the Federal Prisons Industries Program, the Drug Abuse Education Program, and both the Nonresidential Drug Abuse Program and the Residential Drug Abuse Program. Mr. Wilson would benefit from those programs.

There is every reason to believe that Mr. Wilson will again, and hopefully soon, regain his place as a productive member of society. The obstacles he has overcome in his life thus far are already significant. With assistance, he can overcome the current obstacles and emerge from prison chastened and prepared to live as a law-abiding citizen.

**IX.   Reasons for a Non-Guidelines Sentence**

No victim has stepped forth to say he or she was injured or otherwise affected by Mr. Wilson's conduct.

The restitution to the Architect of the Capitol in the amount of $2,000 is a more or less routine assessment on January 6 defendants in general. It reflects an overall assessment of damage to the Capitol building in the amount of approximately $2.9 million, a significant sum, but far less than what one would expect from an attack described by some as a insurrection intended to undermine the pillars of our Government. Replacement costs of things like windows and perimeter fences are significant at the Capitol.

The guidelines require a sentence sufficient to reflect the seriousness of the conduct, but no greater than necessary to accomplish that task. Mr. Wilson contends that the guidelines sentence overstates the significance of the conduct for which Mr. Wilson was actually convicted. To a dangerous extent the Government's sentencing papers in this and related cases seek to impose something like guilt by association. Yes, Mr. Wilson was part of a much larger crowd. But the crowd is not being sentenced here; Mr. Wilson is.

## X.     A Sentence of Two Years

Mr. Wilson requests a sentence of no more than two years imprisonment and no imposition of a fine.

THE DEFENDANT

By /s/ Norman Pattis /s/
NORMAN PATTIS
Pattis & Paz,LLC
383 Orange Street
New Haven, CT 06511 Tel:
Tel:  203-393-3017
Fax: 203-393-9745
npattis@pattispazlaw.com

9

**CERTIFICATE OF SERVICE**

    I hereby certify that on the foregoing date, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

                                                        /s/ NORMAN PATTIS