UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:23-cr-00427-DLF-1 |
|    PLAINTIFF | : | |
| | : | |
| Vs. | : | |
| | : | |
| DAN EDWIN WILSON | : | |
|    DEFENDANT | : | AUGUST 15, 2024 |

### DEFENDANT'S REPLY SENTENCING MEMORANDUM

Notwithstanding the recommendation of the Presentence Report writer, the Government seeks an upward departure or variance of the recommended sentence of 33 to 41 months, requesting that the Court impose a 60-month sentence. Mr. Wilson, by contrast seeks a downward departure or variance and a sentence of two years together with a recommendation that he be required to participate in certain rehabilitative programs. In this memo, the defendant urges to reject the Government's requested sentence of 60 months.

The undersigned represented Joseph Biggs, a leader of the Proud Boys, in an extended trial before Kelly, J., in this courthouse, and now represents both Mr. Biggs and Zachary Rehl, a co-defendant in the Proud Boys trial, in the United States Court of Appeals for the District of Columbia. He represented both Mssrs. Biggs and Rehl in their sentencings before Kelly,

1

J.  What is striking about the Government's sentencing memoranda in this case and in the Proud Boys cases is the same urgent sense of outrage, despite the fact that in the Proud Boys cases the charges of conviction included seditious conspiracy and other counts carrying a maximum of 20 years. The Government there sought terrorism enhancements based on the destruction of Government property by the defendants and their co-conspirators, a fence valued at approximately $34,000. As in Mr. Wilson's case, the Government relied heavily on incendiary speech uttered by the defendants in the days and weeks before January 6, 2021. But unlike the case at bar, the Government attempted in the Proud Boys case to prove an elaborate plan to disrupt the Government, a plan including creation of a Ministry of Defense and related groups. In the absence of direct proof of such a plan, the Government urged the jury in closing argument to convict on the basis of a so-called "implicit conspiracy" formed at the moment the first barricade was breached. The cases differ in scope, but have somehow become identical in rhetoric. Mr. Wilson exhorted others to attend a rally in Washington, D.C., on January 6, and once there, he entered the Capitol in violation of the law. But he was not part of a larger conspiracy whose plans ripened into alleged planned and coordinated activity on January 6, 2021, and he should not be treated as such. Mr. Wilson was never charged with

2

seditious conspiracy and the Government, wisely in light of the ultimate decision in *Fischer v. United States* decision (6/28/2024), did not seek a plea on the 1512 charges it lodged.

The Government seeks an upward variance because Mr. Wilson's conduct, together with that or hundreds, if not thousands of others, "was a serious offense that attacked the fundamentals of American democracy." Govt's Memo., p. 36. As such, the Government urges this Court to conclude this was the functional equivalent of an act of terrorism and asks for a variance on grounds of 3A1.4, n. 4, because the defendant's conduct was "calculated to" … "affect the conduct of government." *Id.*, p. 38. This reasoning comes perilously close to calling anyone who protests, assembles and petitions for redress of grievances a terrorist. Although the Government scorns the notion that Mr. Wilson had any "legitimate evidence" to support his belief that the election was stolen, it bears remembering that no less a personage than the President of the United States continued to assert, even on January 6, and thereafter, that the election was stolen. Millions of his supporters would find it unsettling to realize that it is a crime to believe the commander in chief and leader of the free world. A stolen election is a far more dire threat to American democracy than a protest designed to delay counting of electoral votes on a given day.

There is a reason that 18 U.S.C. Section 2332b(g)(5) enumerated nearly 50 federal crimes that would support application of the terrorism enhancement. It is to provide the Court with guidance on the level of severity of the conduct required to support such a finding. The Government's sentencing memorandum here is written for another case. Mr. Wilson was not charged with seditious conspiracy in the form of planning to use force to oppose the authority of the Government. Yet that is the accusation in the Government's memorandum used to support the claim that a terrorism enhancement applied. Govt's Sentencing Memo., p. 39. Lest there be any doubt that this is what the Government has done, consider its reliance on the sentences imposed and the use of terrorism enhancements in the Oath Keepers case. Id., pp. 41-42, a case in which seditious conspiracy was charged. The Government then compares the sentences imposed on Proud Boys, another group charged with seditious conspiracy. Id., pp. 55-56. If the comparisons are apt, then Mr. Wilson should have been charged with seditious conspiracy. He was not because, presumably, the evidence of which the Government is aware did not support the charge. The Proud Boys and Oath Keepers cases are not meaningful comparators.

Paradoxically, the Government already has what it wants with respect to the January 6 conduct. Even if the Court applies the two-point

4

enhancement under 2J1.2(b)(3)(C), the total offense level for the Section 372 offense is 16. The combined offense level is 23. The difference in sentencing consequences roughly two years according to the sentencing table. "Adding back" points to basically eliminate the credit Mr. Wilson gets for acceptance of responsibility and leveraging enhancements on the less serious offense to enhance the penalty for the more serious firearms offenses is, to say the least, inequitable.

So, too, is the Government's refusal to accept that Mr. Wilson falls within Criminal History I. It asks this Court to use its sentencing discretion to undermine one of the fundamental goals of the criminal sanction – rehabilitation. The reason Mr. Wilson's extensive criminal history nonetheless results in his being in Criminal History I is that the convictions are by now ancient. He has largely overcome the roadblocks of a difficult childhood and become a productive member of society. In other words, rehabilitation worked. The fact that he was caught up in the drama of January 6 and whatever it says about the partisan divide In this country does not transform him Into a career criminal. Dredging up ancient ghosts to populate the Government's January 6 House of Horrors refuses to recognize the hard work Mr. Wilson did to overcome his earlier challenge. As noted in our earlier brief, he is now a licensed electrician and a productive member of society.

The Court should reject the Government's invitation to look back 30 years as it imposes sentence.

>THE DEFENDANT,
>
>By /s/ Norman A. Pattis, Esq.
>Norman A. Pattis, Esq.
>PATTIS & PAZ, LLC
>383 Orange St.
>New Haven, CT  06511
>Tel:    203-393-3017
>Fax:   203-393-9745
>npattis@pattispazlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

>/s/    Norman A. Pattis, Esq.