```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,       ) CRIMINAL ACTION NO.:
                                      ) 23-0427-DLF
 4              Plaintiff,            )
           vs.                       )
 5                                   )
      DAN EDWIN WILSON,               )
 6                                   ) Washington, D.C.
                Defendant.           ) February 26th, 2025
 7    _____) 11:35 a.m.

 8

 9                  Transcript of Motions Hearing
               Before the Honorable Dabney L. Friedrich
10                  United States District Judge

11

12    APPEARANCES:

13    For the Government: Jennifer L. Blackwell, Esquire
                          U.S. Attorney's Office
14                        555 4th Street, N.W.
                          Washington, DC 20530
15

16

17    For the Defendant:  George T. Pallas, Esquire
                          George T. Pallas, P.A.
18                        2420 Coral Way
                          Miami, FL 33145
19

20

21    Reported by:        Christine T. Asif, RPR, FCRR
                          Official Court Reporter
22                        United States District Court
                          for the District of Columbia
23                        333 Contitution Avenue, NW
                          Washington, D.C., 20001
24                        (202) 354-3247

25    Proceedings recorded by machine shorthand; transcript produced
      by computer-aided transcription
```

1                    P R O C E E D I N G S

2          THE CLERK:  We are on the record in criminal case

3   23-427-1, United States of America versus Dan Edwin Wilson.

4          Starting with the government, please approach the

5   podium and state your appearance for the record.

6          MS. BLACKWELL:  May it please the Court, Jennifer

7   Blackwell, appearing on behalf of the United States.

8          THE COURT:  Good morning, Ms. Blackwell.

9          MS. BLACKWELL:  Good morning.

10         MR. PALLAS:  Good morning, Your Honor.  George

11  Pallas on behalf of Dan Edwin Wilson, who is also present.

12         THE COURT:  All right.  Good morning to both of you.

13  Just bear with me one moment while I get the realtime going.

14         (Pause in the proceedings.)

15         THE COURT:  All right.  Counsel, this is a hearing

16  on the defendant's emergency motion to vacate the order

17  requiring the defendant to report to the Bureau of Prisons

18  tomorrow.  Although it's the defendant's motion, I'd like to

19  hear first from the Department of Justice because the

20  department has not opposed the defendant's motion, and the

21  Court scheduled this hearing because it needs some clarity on

22  what the government's current position is.

23         MS. BLACKWELL:  Thank you, Your Honor.  And I

24  understand.  As Your Honor is aware from the procedural

25  history, we did file a motion and response to the Court's

1    order, I believe that was approximately three weeks ago now,

2    indicating that under the plain language of the pardon

3    certificate, the government did not believe that the pardon

4    covered the firearms offenses to which this defendant pled

5    guilty in this court and then was sentenced in August of last

6    year.

7              However, as we indicated in our filing papers

8    yesterday, and the reason that we did not oppose the

9    defendant's motion, is because there has been further clarity

10   about the presidential intent of the pardons.  Specifically,

11   as noted in our papers, there are similarly situated cases

12   which have either been vacated or dismissed, and they are

13   similarly postured to Mr. Wilson's example here, in that those

14   were cases in which there was a search warrant for evidence

15   related to January 6th of 2021, and in that search warrant,

16   the law enforcement located contraband, whether that be

17   firearms or drugs.  And it is now the position of the

18   department that in those cases and under these circumstances,

19   if there was contraband such as firearms that were found

20   pursuant to a search warrant that was executed from

21   January 6th of 2021, that the pardon does cover those offenses

22   as well.  So in order to be consistent with the posture the

23   department has taken with respect to those other defendants --

24             THE COURT:  But to be clear, the position the

25   department has taken with those other defendants is also very

1   recent.

2           MS. BLACKWELL:  That is correct, Your Honor.

3           THE COURT:  Okay.

4           MS. BLACKWELL:  It has been in the intervening three

5   weeks.  And in fact, one I filed was as recently as yesterday

6   morning.

7           THE COURT:  And today in this case.

8           MS. BLACKWELL:  Yes, that's correct, Your Honor.

9           THE COURT:  Okay.  So earlier in this case, and I

10  presume in others, the government stated that the pardon only

11  applies to convictions for offenses related to events that

12  occurred at or near the Capitol on January 6th.  And in this

13  case, with respect to these firearms offenses, which are

14  possession of firearms in the Western District of Kentucky, on

15  a date in 2023, those firearms, although Mr. Wilson certainly

16  discussed before January 6th bringing firearms to the Capitol,

17  the government never took the position, and presented the

18  Court with no evidence, that Mr. Wilson actually had the

19  firearms with him on January 6th.

20          So the government said, I think it was, I don't

21  know, around February 6th, that you took the position here

22  that those charges, those convictions for the firearms

23  offenses, were complete -- they were unrelated and that the

24  plain language of the pardon excluded them, plain language.

25          So I'm wondering now, is it the government's

1    position that the plain language does not exclude those

2    convictions, that you had it wrong a couple of weeks ago?  Is

3    that what you're saying now?

4         MS. BLACKWELL:  That is correct.  And I think just

5    to add to that, we've had more of an understanding of the

6    presidential intent.  So it is the presidential intent that

7    governs what is covered by the pardon.  And I think in light

8    of these other cases and guidance from the department, we have

9    more of an understanding of what that intent does cover.

10        THE COURT:  All right.  Well, I want to put aside

11   the other cases, because I think that they've all -- the

12   government's flipped in all of them.

13        MS. BLACKWELL:  In candor, Your Honor, I do believe

14   this was the only case in which we were called upon to sort of

15   have one position and then when our understanding of the

16   intent further developed, then take what seemed to be a

17   contrary position --

18        THE COURT:  I don't know that that's true.  I think

19   in another -- at least one other case I thought you set forth,

20   quite clearly, the sort of time and location restriction on

21   the pardon language.  I could be wrong.

22        But regardless, it doesn't matter.  What I'm trying

23   to understand is from your filing, it wasn't clear to me

24   exactly what the definition of the pardon is.  And if I'm

25   understanding what you're saying today, it is the government's

1    position that the plain language of the pardon means that any

2    convictions which stemmed from evidence that was seized as a

3    result of a January 6th investigation search warrant, those

4    convictions are covered by the plain language of the pardon,

5    even though they were separated from the events of the Capitol

6    in both time and place.

7             MS. BLACKWELL:  So I want to be careful in

8    responding to Your Honor's question, because I am aware that

9    there are other cases in which the events are separated by

10   time and place from the January 6th that are not covered by

11   the pardon.

12            THE COURT:  So tell me what those are, because it

13   seems to me, and correct me if I'm wrong, but it seems to me

14   that the meaning of the pardon was established on

15   January 20th, when it was entered, not after the fact, right?

16   I mean, that's when we discern the meaning of the pardon.

17            MS. BLACKWELL:  Understood.

18            THE COURT:  It doesn't evolve over time.  It's not a

19   blank -- fill-in-the blanks pardon with some loose language.

20   It is a document that has legal meaning, and that meaning is

21   set at the time the pardon is issued.  Do you agree with that?

22            MS. BLACKWELL:  I understand, Your Honor.  I

23   think --

24            THE COURT:  Do you agree with that?

25            MS. BLACKWELL:  I do agree with it, but I think in

1    terms of the department's understanding of the president's

2    intent, I think that has become clearer over time.

3            THE COURT:  Okay.  But I understand the president's

4    intent has become clear over time, but even just focusing on

5    the president's intent and not the language, you would agree

6    the president's intent has to be formed on January 20th, when

7    he issues the pardon.  He can't change his intent and

8    essentially issue a new pardon as time lapsed.  The proper

9    procedure is for the president to exercise his constitutional

10   authority to issue a new or different pardon if his intent,

11   or, I would argue, the language changes over time, right?  I

12   mean, the pardon is set when it issues.

13           MS. BLACKWELL:  I would -- I see Your Honor's point,

14   but I will definitely caveat my answer to say that I'm not an

15   expert on the pardon power.

16           THE COURT:  Right.  But I'm looking to the

17   department --

18           MS. BLACKWELL:  Correct.

19           THE COURT:  -- to guide the Court on how the Court

20   interprets the pardon and what degree of deference the Court

21   gives to the president's intent.  And so I'm -- you know, I'm

22   looking for the department's view at this time on how a court

23   should interpret a pardon.

24           I'm sensing that you are suggesting perhaps -- I

25   don't want to put words in your mouth, but you're suggesting

1    that the president's intent can -- excuse the pun -- but trump

2    the plain language of the pardon.  Is that what you're

3    arguing?

4            MS. BLACKWELL:  So actually, I would say I'm not

5    arguing that.

6            THE COURT:  Okay.

7            MS. BLACKWELL:  Because if you look at the pardon

8    from January 20th, it is very broad.  So --

9            THE COURT:  Well, it -- I mean, yes and no.  It has

10    some pretty clear text.  The pardon applies to convictions for

11    offenses related to events that occurred at or near the

12    U.S. Capitol on January 6th, 2021.  So the pardon does not say

13    convictions related to offenses -- it doesn't say convictions

14    related to events that occurred at the Capitol.  What it says

15    is convictions for offenses related to events.  So it's the

16    offense that needs to be related, not the conviction.

17            The offense here, again, is possession of firearms

18    on a date in 2023, in the Western District of Kentucky.  I

19    believed, at the time I ordered the government to give its

20    view on what the pardon meant, I believe that the plain

21    language did not include these possession of firearms in the

22    Western District of Kentucky.  The government affirmed the

23    Court's view that the plain language does not include those

24    offenses.

25            I'm just trying to get clarity now on what the

1  government's position is.  Is it that the government was wrong

2  at that time in saying the plain language did not include

3  these firearms offenses?  Or is it saying the government still

4  believes the plain language does not cover these offenses, but

5  the president's intent was different, and therefore, the Court

6  should defer to the president's intent rather than the plain

7  language of the pardon?

8          MS. BLACKWELL:  I think both could be true.  I think

9  the "related to" is a pretty expansive word.

10         THE COURT:  Convictions related to events.

11         MS. BLACKWELL:  Correct.

12         THE COURT:  Not investigations, events that occurred

13  at the Capitol.

14         MS. BLACKWELL:  And then we would have to go to part

15  two, which is the presidential intent, and the intent of that

16  phrase was to capture the convictions that may have been sort

17  of a but for, if you will --

18         THE COURT:  But why isn't the solution here for a

19  clarifying pardon to issue that says what was intended on that

20  date, as opposed to a reinterpretation of language that was

21  clear to the department and clear to the Court a matter of

22  days ago?

23         MS. BLACKWELL:  I can understand the Court's

24  position on that, but I will say given the amount of pardons

25  that this affected, you know, it invariably took some time to

1    determine what the presidential intent was as to each of

2    these special cases.

3                 THE COURT:  But that's my concern, is that the

4    intent cannot evolve over time as new cases are brought to his

5    intention by defense attorneys or others.

6                 MS. BLACKWELL:  And with respect --

7                 THE COURT:  It -- I mean, I'm looking for you to

8    push back on this.  I feel strongly that the meaning of the

9    pardon was set on January 20th of 2025.  Do you disagree with

10   that?

11                MS. BLACKWELL:  I don't disagree, but I do think it

12   is fair to say that an understanding -- that the presidential

13   intent governs --

14                THE COURT:  Governs over the plain text of the

15   pardon.  That's your position.

16                MS. BLACKWELL:  But I think you have to --

17                THE COURT:  Yes or no?

18                MS. BLACKWELL:  You have to read them together.

19                THE COURT:  No, no, I'm -- there's two arguments

20   here.  You can make them both, but I want to make sure I

21   understand what the government's position is now.

22                The government's position is, it sounds like, even

23   if the plain language excludes these convictions from the

24   pardon, the president's intent trumps the plain language.

25   That's the secondary argument.  Am I correct you're making

1    that argument?

2          MS. BLACKWELL:  I would go back to my default of the

3    presidential intent governs, but it's through a reading of the

4    plain language that it could be said to include these --

5          THE COURT:  But that's suggesting that you're saying

6    the plain language is ambiguous.  You didn't say that days

7    ago, but you're saying now the plain language is ambiguous; is

8    that right?

9          MS. BLACKWELL:  I think the plain language is broad.

10   I think there is an argument that the actual pardon

11   certificate may be more detailed than the pardon itself.  So

12   if we go back to the pardon itself, I think that is more

13   expansive in its reading than the actual pardon certificate.

14         THE COURT:  So what governs, in the government's

15   view, the pardon or the certificate?  Can the certificate

16   reinterpret the pardon to mean something other than the plain

17   language of the pardon?

18         MS. BLACKWELL:  I don't think so.  I think --

19         THE COURT:  Okay.  So you're saying the certificate

20   informs, in real time, the meaning of the text of the

21   pardon.

22         MS. BLACKWELL:  I think that's right.

23         THE COURT:  And that certificate was issued the same

24   day.  And the certificate in this case, remind me, it says

25   what?

1          MS. BLACKWELL:  I believe the defense attorney filed

2     it.  It's sitting right there.

3          THE COURT:  Is it attached to the --

4          MS. BLACKWELL:  He just filed it this morning.

5          THE COURT:  You filed it this morning?

6          MR. PALLAS:  Yes, Your Honor, I filed this morning.

7     I noticed it wasn't even in the record, so I filed it to make

8     sure --

9          THE COURT:  Let me -- I missed that.  Let me pull it

10    up.

11         MR. PALLAS:  It's actually more narrow than the

12    executive order on January 20th.

13         THE COURT:  Okay.  So the certificate says that

14    Daniel Edwin Wilson was pardoned by the presidential

15    proclamation of January 20th, 2025.  The pardon applies only

16    to convictions for offenses related to events that occurred at

17    or near the Capitol on January 6th.

18         Is this not identical to the language of the pardon?

19    Or it's the language I've been referencing.

20         Mr. Pallas, what's different between --

21         MR. PALLAS:  I read it kind of quickly, and I

22    thought it was a little bit narrower because it didn't say

23    related.

24         THE COURT:  It does say related to.

25         MR. PALLAS:  Okay.  Well, then I take that back,

1    Judge.  But I can clear this up very quickly, Judge.

2              THE COURT:  Well, no, no, I want to -- I'll hear

3    from you in a moment, but I want to stick with Ms. Blackwell.

4              MR. PALLAS:  Okay.

5              MS. BLACKWELL:  I think to be fair, Your Honor, the

6    pardon says "all other individuals convicted of."  The pardon

7    certificate says "convictions for."  So there is an argument

8    that "individuals convicted of" is perhaps broader than just

9    the word "convictions for offenses."

10             THE COURT:  Okay.  Wait.

11             Can I get you to print this out because I can't read

12   it sideways.

13             THE CLERK:  Yes.

14             THE COURT:  Thank you.

15             All right.  So, Ms. Blackwell, you are saying the --

16   it says the pardon applies only to convictions for offenses

17   related, as opposed to -- what did the pardon say?

18             MS. BLACKWELL:  The pardon says "all other

19   individuals convicted of."

20             THE COURT:  Convicted of.  So you're saying

21   convicted of offenses related to events is different than

22   convictions for offenses related to events.  I don't

23   understand the distinction.  Can you walk me through what they

24   mean?

25             MS. BLACKWELL:  I think the former, then.  I think

1    the pardon itself would allow an interpretation that in cases

2    such as this, where you have a search warrant based on the

3    January 6th activities, that then, because these were

4    individuals convicted of, that that would extend to those

5    cases in which it was a relationship between the search

6    warrant for the January 6th and the contraband that was --

7            THE COURT:  Okay.  So the -- you're actually saying

8    the opposite of what Mr. Pallas was arguing in terms of the

9    certificate versus the pardon itself.  You're saying the

10   pardon itself has broader language because it uses the word

11   "convicted of offenses related to events"?

12           MS. BLACKWELL:  Correct.

13           THE COURT:  And because you're convicted of offenses

14   related to events, but again, the qualifier is "events that

15   occurred at or near the Capitol."

16           So how is being convicted of a gun possession

17   offense in Kentucky in 2023 related to events that occurred at

18   or near the Capitol?  You're saying it's related to the

19   investigation.

20           MS. BLACKWELL:  I think Mr. Pallas would -- and I

21   don't want to borrow from his argument, but it's sort of a

22   but-for analysis, that but for what the defendant did on

23   January 6th, that law enforcement would not have uncovered the

24   firearms in this case, which led to a --

25           THE COURT:  No, I understand.  So you embrace -- you

1    didn't oppose that motion.  You embrace the defense's

2    interpretation.

3              MS. BLACKWELL:  That is correct.

4              THE COURT:  That is the government's position now.

5              MS. BLACKWELL:  Yes.

6              THE COURT:  All right.  And so just to -- just to --

7    I'm going to pull up the defense's filing here.  I just want

8    to make sure that we're all on the same page.

9              So we're talking about Mr. Wilson's unopposed motion

10   to vacate, set aside, or correct the sentence?

11             MS. BLACKWELL:  Correct.

12             THE COURT:  All right.  And another thing, he adds

13   language that's not in the pardon.  He's got, in bold, "any

14   convictions arising from or related to."  That's not what the

15   pardon says.

16             MS. BLACKWELL:  Correct.

17             THE COURT:  All right.  So I don't know that even in

18   this motion that there is a clearly articulated definition, so

19   I'd ask you, Ms. Blackwell, to articulate the definition of

20   the pardon.  I understand what you're saying.  It includes any

21   contraband seized as a result of a January 6th-related search

22   warrant.

23             But I just want a clear definition of the pardon

24   because what you've said in your filing is it includes these

25   two offenses.  But from what you're saying, it includes other

1    offenses as well, not just these two firearm offenses.

2           So I'm looking for the definition that was formed on

3    January 20th of 2025.  Unless you tell me that the definition

4    can change over time, I can't imagine what authority you could

5    present that would convince the Court that that is true.  But,

6    you know, correct me if I'm wrong.

7           MS. BLACKWELL:  So with respect, Your Honor, I can

8    speak to this case, and in this case, as with the other

9    examples that we cited, the pardon covers situations like

10   this, where there was a search warrant for evidence related to

11   January 6th of 2021, which the pardon clearly covers, and they

12   then uncover additional evidence that leads to additional

13   charges or convictions.

14          THE COURT:  I understood your speaking about this

15   case.  However, if the government's taking a position in this

16   case that's different than -- and saying the pardon means

17   something else in another case, that's a problem.  You'd

18   agree?

19          MS. BLACKWELL:  I would agree.

20          THE COURT:  Okay.  So I need to know what's the

21   high-level definition of the pardon from which you made the

22   determination that these offenses were covered by the pardon.

23   There has to be somewhere, if not in writing in the pardon,

24   somewhere a definition for what this pardon means, however

25   inartfully it was drafted.

1          MS. BLACKWELL:  In consultation with department

2    leader Schiff, as in the other cases, we understand that the

3    presidential intent is to cover this case and the other cases

4    that were cited.  I do not want to go beyond and hypothesize

5    as to other cases where the pardon may not apply.

6          THE COURT:  But the pardon has to have a meaning, a

7    fixed meaning that was formed on January 20th.

8          MS. BLACKWELL:  And the fixed meaning of the pardon

9    is it applies to cases like this.

10          THE COURT:  It's not an ad hoc dribble out, like

11    what about this one?  There is an intention.  There is

12    language, I would argue, that governs.  You argue that the

13    president's intention governs, perhaps more than the plain

14    language, and I'm looking -- I will be looking for authority

15    to support that argument.

16          But it's not -- it can't be the case that a pardon

17    can be issued in vague terms and, you know, months later the

18    president can make a determination that this is what it means.

19    There has to be some overarching meaning to this pardon from

20    which the department does its proper role of applying the

21    pardon to cases.  But it has to have meaning.  And the only

22    meaning I see is what the plain language provides.

23          So if there's some alternative meaning, other than

24    the plain language, I need to know what that is.  Because I do

25    have a role here, right?  I mean, the pardon doesn't itself --

1    it's not a mechanical exercise where the pardon hits the

2    Court's docket and a defendant is released.  There is a role

3    for the judge to execute the order releasing a defendant or

4    not ordering a defendant to report.  There is a judicial role

5    here to interpret the pardon.  You agree with that?

6        MS. BLACKWELL:  Not necessarily, because it's only

7    in a few cases that we needed to rely on judicial

8    interpretation because really, this is an executive function.

9    It is an executive order.

10        THE COURT:  Understood it's an executive function,

11   but it's not an executive function that results in release of

12   people from prison without a court order.  And the Court's

13   role is to apply the pardon to the facts.  But if the pardon

14   said Mr. Wilson is pardoned for a list of January 6th

15   offenses, and he's before me on a murder conviction, I have a

16   role in saying this pardon doesn't cover the murder

17   conviction.  Agreed?

18        MS. BLACKWELL:  So, no, Your Honor, respectfully, I

19   would say that that would be up to the executive, and the

20   executive in that case would be saying, no, the pardon doesn't

21   cover this.

22        THE COURT:  Even though the pardon that I'm

23   describing here says Mr. Wilson is pardoned for an assault, a

24   conspiracy to assault federal officers on January 6th of 2021,

25   that's the plain language of the pardon, let's put this aside.

1    It's a clear pardon, one offense on one date.  And before me

2    is another case involving a murder from five years ago.

3              You're saying that that pardon, if you said it,

4    covered that?  That conviction, you came to court and said,

5    Your Honor, despite what the plain language of this pardon

6    says, President Trump says it covers his murder conviction,

7    that I would be bound to release him for the murder

8    conviction, without a pardon saying -- I mean, the pardon

9    could say I pardon Dan Edwin Wilson for all crimes.  Fair

10   enough.  The president has the exclusive authority to make

11   that determination.  He can pardon Dan Edwin Wilson for any

12   crime he's ever committed.  But that's not what happened here.

13   And so the language of a pardon has to matter.

14             MS. BLACKWELL:  But in that case, I would think Your

15   Honor would at least -- and again, then we go back to

16   presidential intent and what is covered by the language of the

17   pardon, and it's the department's interpretation that this is

18   covered by the language of the pardon.

19             THE COURT:  Okay.  So your step -- your first answer

20   to my question about the plain language is the department got

21   it wrong, the plain language does, in fact, cover these gun

22   offenses.  That's your first-line argument.

23             MS. BLACKWELL:  Correct.

24             THE COURT:  Your second-line argument is even if the

25   Court disagrees and thinks the plain language does not cover

1    the Kentucky firearm offenses, the Court has to accept the

2    government's proffer here about the president's intent.

3            MS. BLACKWELL:  Under these circumstances, yes, Your

4    Honor.

5            THE COURT:  Under what circumstances?

6            MS. BLACKWELL:  I -- I can't -- I just want to be

7    careful that I'm not speaking to other cases.  So I understand

8    under these circumstances, that I think I've sort of confined,

9    I think the Court would have to accept the government's

10   interpretation of how that's applied.

11           THE COURT:  Okay.  But if there was a pardon that

12   applied to a large number of people like this, you know,

13   January 6th defendants, and it said the president pardons, you

14   know, January 6th defendants for offenses to be determined,

15   can the president do that?

16           MS. BLACKWELL:  I don't know, Your Honor.

17           THE COURT:  You don't know.

18           MS. BLACKWELL:  No.  Like, I -- again, I'm going to

19   go back to my default of I'm not an expert on pardon law.

20           THE COURT:  But I need an expert in pardon law.

21   This is -- I have no analysis in the department's filings.

22   Like you are the department.  You are tasked with applying

23   pardons, interpreting pardons, drafting pardons.  You are the

24   experts.

25           MS. BLACKWELL:  That is --

1          THE COURT:  The executive branch is the experts in

2     pardons.  So if you can't answer the questions, I need you to

3     get a colleague from the department that can answer these

4     questions.

5          MS. BLACKWELL:  And I think the recourse here, Your

6     Honor, is I'm going back to the as applied, and we have

7     presented circumstances to show how the "as applied" language

8     is working in very similar cases to Mr. Wilson.

9          THE COURT:  Okay.  But is the overarching -- I'm

10     going to try to help you craft a definition that you're

11     comfortable with, because I don't think that you can just have

12     an open pardon without any meaning.  I don't -- I think it

13     can't be completely divorced from the text.  And to the extent

14     intent informs the text, the intent has to be expressed.  It

15     can't be we know it when we see it.  Fair enough?

16          MS. BLACKWELL:  In this case, the language is broad

17     enough that -- and again, we've shown how this can be covered

18     by the broad language.

19          THE COURT:  Okay.  But you're telling me that the

20     broad language doesn't mean what you told me it meant a couple

21     weeks ago, and that is that it's tied to the events that

22     occurred at or near the Capitol on January 6th.  And in this

23     case, these offenses were separated both time and geography.

24     And there was no evidence that Mr. Wilson brought any of these

25     firearms, the six firearms he had in his place, including the

1    automatic weapons and missing serial numbers, that you had no

2    evidence that he took any of those to January 6th.

3         So it sounds like the meaning is offenses related to

4    events means -- it includes offenses that were charged as a

5    result of either the January 6th investigation or search

6    warrants in the January 6th investigation?  Which is it?

7         MS. BLACKWELL:  I would limit it to as a result of

8    search warrants that were --

9         THE COURT:  Search warrants conducted as part of the

10   January 6th investigation?

11        MS. BLACKWELL:  Correct.

12        THE COURT:  Okay.  So basically, any items that were

13   seized in a search related to a January 6th search warrant.

14   Is that -- is that fair?

15        MS. BLACKWELL:  I think that is fair.  I will say

16   that there is one case I am aware of in North Carolina, and

17   forgive me, Your Honor, I do not have the case caption, but

18   it's my understanding that there was CSAM located in

19   that residence and --

20        THE COURT:  There was what?

21        MS. BLACKWELL:  CSAM.

22        THE COURT:  What do you mean?

23        MS. BLACKWELL:  Child pornography.

24        THE COURT:  Okay.  So it doesn't cover child

25   pornography.

1        MS. BLACKWELL:  But only because it's my

2   understanding that there was an already -- an existing

3   investigation into that matter.

4        THE COURT:  Okay.  So let's modify this.  So it

5   includes offenses that were charged as a result of search

6   warrants conducted as part of the January 6th investigation

7   for which the government did not have pre-existing evidence?

8        MS. BLACKWELL:  I think that's fair, Your Honor.

9        THE COURT:  Did not have pre-existing evidence.  So

10  you're saying you are proceeding with the prosecution of a

11  child pornographer based on child pornography that was seized

12  during a January 6th search warrant, but you're only

13  proceeding with respect to that prosecution because you knew

14  something about the child pornography before the search or

15  just child exploitation before the search.

16        MS. BLACKWELL:  And, Your Honor, that --

17  unfortunately, my visibility into that investigation is fairly

18  limited.  I was only informed that there was at least a

19  pre-existing investigation into either CSAM or child

20  exploitation before the search warrant for the January 6th

21  material.

22        THE COURT:  Because my understanding, and my

23  understanding is probably less like -- less informed than

24  yours, but my understanding was that there was an

25  investigation about -- related to the exploitation of

1    children, physically, but I'm -- was unaware of any child

2    pornography.

3                So those are -- it's not quite right, then, to say

4    an investigation for which the government did not have

5    pre-existing evidence relating to similar offenses.  I mean,

6    it's not even pre -- is that fair?

7                MS. BLACKWELL:  That's fair.

8                MR. PALLAS:  Judge, I know a little bit more about

9    that case, if you're interested.

10               THE COURT:  Sure.

11               MR. PALLAS:  My understanding is that it was a

12   situation where an adult male, January 6th defendant, was

13   having communications with an underage female and texting back

14   and forth, and an exchange of sexually explicit materials that

15   the government was aware of, or authorities were aware of, and

16   then --

17               THE COURT:  So already was aware of child

18   pornography?

19               MR. PALLAS:  Well, I think it was -- it was child

20   pornography that was related to that particular victim that

21   the defendant was exchanging --

22               THE COURT:  No, but my understanding was the

23   defendant was -- there was an investigation of child

24   exploitation of that victim.

25               MR. PALLAS:  Correct.

1              THE COURT:  But when they did the search related to

2      January 6th, they found child pornography related to that

3      victim.

4              MR. PALLAS:  Correct, that's my understanding

5      also.

6              THE COURT:  Okay.  So again, I think we have to add

7      this qualifier, which is, this includes offenses that were

8      charged as a result of search warrants conducted as part of

9      the January 6th investigation for which the government did not

10     have pre-existing evidence relating to similar offenses,

11     because in that case -- I mean, I invite you, Ms. Blackwell,

12     to supplement the record after -- immediately after this

13     hearing if the government had pre-existing evidence about the

14     child pornography, as opposed to related sexual exploitation

15     offenses.

16             All right.  So that's an interesting line to draw,

17     because potentially, Mr. -- President Trump has pardoned --

18     you know, hypothetically, if someone -- if part of this

19     January 6th-gathered evidence includes evidence linking a

20     January 6th defendant to a murder, that's covered.  Is that

21     the government's position?

22             MS. BLACKWELL:  I would not want to take that

23     position, Your Honor, not knowing about these hypothetical

24     cases.

25             THE COURT:  Okay.  But this is my struggle,

1    Ms. Blackwell.

2              MS. BLACKWELL:  I understand.

3              THE COURT:  We can't just have a pardon out there

4    that's just subject to reinterpretation every day depending

5    upon the egregious facts of any particular case.  It has to

6    have a fixed meaning.

7              MS. BLACKWELL:  But I think we're only speaking to

8    the charged cases of which we are currently aware, and these

9    are the charged cases that we are currently aware.  And we are

10   sort of highlighting the ones that are in a unique posture.

11             THE COURT:  Okay.  So we have to add another phrase

12   to this.  So, you know, after all of these qualifiers, then we

13   say but only those offenses of which the government is

14   aware.

15             MS. BLACKWELL:  Or which are currently charged,

16   because that would include this case, and the others that

17   were --

18             THE COURT:  But what if the murder case hasn't been

19   charged yet?

20             MS. BLACKWELL:  And again, I would leave that to

21   another prosecutor to argue that, that I don't think the

22   department's position would be the same.

23             THE COURT:  But the meaning of the pardon can't be

24   shifting from day to day.

25             MS. BLACKWELL:  Correct.  And I don't think -- I

1    mean, again, I'll go back to the we don't know what we don't

2    know, so that's why I can't speak to cases that haven't been

3    charged or brought to the department's attention.

4            THE COURT:  Okay.  Back to the child porn case.  My

5    understanding is the laptops were seized as part of the

6    January 6th investigation.

7            MS. BLACKWELL:  I think that's correct, Your

8    Honor.

9            THE COURT:  But my understanding was also that the

10   agents had some knowledge of exploitation of a minor whose

11   photographs were found on the laptops.

12           MS. BLACKWELL:  I think that's correct.

13           THE COURT:  Okay.

14           MS. BLACKWELL:  And I'll also -- this language that

15   Your Honor has crafted, I will also note, does not apply to

16   the other case that I'm aware of, Mr. Edward Kelly, and that's

17   in Tennessee, and that was for actions that were separate and

18   apart from January 6th.

19           THE COURT:  Okay.  We'll get there.  But to be

20   clear, it's not my job to craft the pardon language, that's

21   the executive's, right?

22           MS. BLACKWELL:  I agree.

23           THE COURT:  I'm just trying to assist you because it

24   seems that you're telling me there is a fixed meaning.  If

25   you're telling me there's not a fixed meaning, then I need to

1    know that because I think that's a problem.

2         MS. BLACKWELL:  I'm going to go back to it's the

3    intent, as demonstrated by the language, and this language is

4    very broad.  So I'm having difficulty in cabining it to -- I

5    mean, it is not Your Honor's duty to draft language.  It is

6    also -- I mean, the language is what it is, and it is my job,

7    as an advocate for the government, to show how the language

8    fits this case.

9         THE COURT:  All right.  But you've earlier said that

10   the Court really doesn't have an interpretive role here.

11        MS. BLACKWELL:  That is my understanding, Your

12   Honor, because this is a presidential pardon.

13        THE COURT:  Well, what about the 11th Circuit case

14   in which Judge Pryor talked about how one goes about

15   interpreting a pardon?  Are you familiar with that case?

16        MS. BLACKWELL:  I am not familiar with that, Your

17   Honor.

18        THE COURT:  Okay.  Well, let me discuss that with

19   you.

20        Okay.  I'm going to come up with the name in just a

21   minute.

22        MS. BLACKWELL:  Thank you.

23        THE COURT:  But in that case, Judge Pryor analogized

24   an agency's interpretation of a pardon to an agency's

25   interpretation of an executive order, and cited *Towman*.  But

in that case, Judge Pryor was considering -- it's *Andrews*, by
the way.  I'll give you a case cite in a moment.  But
Judge Pryor was considering the deference owed to the Bureau
of Prisons when it was recalculating a sentence in the regular
course of business on behalf of the president.

Here, we've got a different situation because
we're -- this was in the context of a pardon.  Here, we're
interpreting the president's pardon, not BOP's regulation.
But -- I mean, the -- Judge Pryor did suggest that the Courts
do use ordinary tools of statutory interpretation.  And --
it's *Andrews v. Warden*, 958 F.3d 1072.

So, you know, again, I'm wondering -- I'm looking
for the department's view, I mean, putting aside this case,
how does a Court go about doing its job with respect to a
pardon and interpreting a pardon?  Does it give *Auer-Kisor*
deference to the government's interpretation?  If so, then the
agency's interpretation has to be reasonable.

MS. BLACKWELL:  I would agree.  And I will go back
to the default.  And again, I hate to keep repeating myself,
but I do believe the pardon is an executive branch function
and thus subject to executive branch interpretation.  It is a
power that is entrusted, and there's very little room, if any,
for judicial interpretation.

THE COURT:  But that's not -- I mean, the
11th Circuit case, granted, it's a different scenario, but

1    it's certainly viewed -- and Judge Mehta cited this recently

2    in a case in which he was looking at how to interpret the

3    pardon and whether it includes -- I don't remember the

4    specifics of that case, but whether it includes supervised

5    release, and he deferred to the government's interpretation of

6    the pardon because he deemed it reasonable.

7             So there's two instances -- that's *Rhodes*, 2025

8    Westlaw 309111.  So there are two instances there in which

9    this Court is aware of other Courts using, you know,

10   traditional statutory interpretive tools before giving

11   deference.  But certainly deferring but not to the exclusion

12   of reasonableness.  So --

13            MS. BLACKWELL:  And I think I would posture that

14   this is certainly within the realm of reasonableness, you

15   know, notwithstanding that we are inherently contradicting

16   ourselves, and for that I apologize for the imposition on Your

17   Honor's time, but, you know, I think, again --

18            THE COURT:  No, I'm not -- look, that -- I'm not

19   faulting you for that.

20            MS. BLACKWELL:  No, no, I understand.

21            THE COURT:  I just need a position.  So the

22   government is saying that -- it sounds like you're saying that

23   this is ambiguous and subject to multiple interpretations, and

24   the interpretation that you're giving it is reasonable.

25            MS. BLACKWELL:  That is correct, Your Honor.

1          THE COURT:  You're not saying that it was a

2  interpretation that was fixed on January 20th, you're saying

3  it's evolved over time.

4          MS. BLACKWELL:  I don't think I would say that.  I

5  think our -- I think it's fair to say our understanding of the

6  intent has evolved over time.  I think given the "as applied,"

7  because certainly, when there was the pardon on that date, and

8  it applied to over a thousand individuals, so I think it would

9  be reasonable to understand that it would take some time for

10  the department to understand the intent of the executive in

11  this pardon authority.

12          THE COURT:  But now you have an understanding of

13  it.

14          MS. BLACKWELL:  That is correct.

15          THE COURT:  And your understanding of what President

16  Trump's intent was on January 20th was that the pardon would

17  include offenses that were charged as a result of search

18  warrants conducted as part of the January 6th investigation

19  for which the government did not have pre-existing evidence

20  relating to similar offenses, but only those the department

21  was aware of.

22          MS. BLACKWELL:  That is correct, Your Honor.

23          THE COURT:  Okay.

24          MS. BLACKWELL:  And I only add the last caveat

25  because --

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

1              THE COURT:  The hypothetical that I raised.

2              MS. BLACKWELL:  Correct.

3              THE COURT:  Okay.  But that's your understanding of

4    President Trump's intent on January 20th.

5              MS. BLACKWELL:  That is correct.

6              THE COURT:  And you don't expect that to change in

7    another court.

8              MS. BLACKWELL:  I do not, not under these similar

9    fact patterns.  I think -- my hesitation is because I am aware

10   of these cases, this one in North Carolina that we've talked

11   about, Mr. Kelly in Tennessee, that the defense counsel may

12   attempt to argue that the pardon applies in those instances,

13   and I believe the department is taking the position that it

14   does not.  Because we've talked about the extenuating

15   circumstances.

16             THE COURT:  And tell me the distinction you can draw

17   in that case from this case.

18             MS. BLACKWELL:  So Mr. Kelly's conduct was

19   completely different from the events of January 6th of 2021.

20             THE COURT:  In what way?

21             MS. BLACKWELL:  He actually -- it was a separate

22   plot and conspiracy, if you will, to assassinate the agents.

23             THE COURT:  That did arise out of the January 6th

24   investigation.

25             MS. BLACKWELL:  But it did not, because his

1    conspiracy to then assassinate them was a separate crime that

2    went to a jury trial.

3              THE COURT:  Okay.  But -- I mean, so was

4    Mr. Wilson's possession of firearms in Kentucky, is a separate

5    crime.

6              MS. BLACKWELL:  But that was not -- but again, we

7    only became aware of that contraband because of the search

8    warrant for evidence related to January 6th.  Mr. Kelly's

9    conduct was separate and apart from that.

10             THE COURT:  But if you apply kind of a but for test

11   that the defense sort of suggests in its filing, you know, but

12   for the January 6th investigation, there never would have been

13   a need to threaten an agent.

14             MS. BLACKWELL:  But again -- but he did, he did

15   threaten those agents and the FBI headquarters there in

16   Tennessee and, you know, that was unrelated, if you will, to

17   what happened on January 6th.

18             THE COURT:  Because it didn't stem from a search

19   warrant.

20             MS. BLACKWELL:  Correct.

21             THE COURT:  But it certainly stemmed from the

22   January 6th investigation, but not the search warrant.  So

23   this just covers contraband items seized in a search warrant

24   that leads to charges.

25             MS. BLACKWELL:  Correct.

1          THE COURT:  And in terms of the level of deference

2    that this Court should accord to the president's

3    interpretation of the pardon, do you think that the Court's

4    correct to apply *Auer-Kisor* deference, give it deference so

5    long as the Court deems it reasonable?

6          MS. BLACKWELL:  That is correct, Your Honor.

7          MR. PALLAS:  Sorry, I didn't hear that last part,

8    Judge, the deference?

9          THE COURT:  I was asking whether the level of

10   deference, if this Court should accord to the president's

11   interpretation, is in line with *Auer* and *Kisor* deference; in

12   other words, if it's reasonable the Court can give deference,

13   but first the Court has to determine that the plain language

14   of the text is not clear.

15         Okay.  So again, the defense has argued that there's

16   definitely a tie to search warrants, right, as opposed to

17   broader events like the example you just provided.

18         MS. BLACKWELL:  Correct.  Tied to search warrants

19   for which there was no pre-existing investigation into related

20   conduct.

21         THE COURT:  Okay.  So the cases that you cited in

22   your filing included the case out of the Middle District of

23   Florida, Mr. Ball, and that defendant's charges were

24   dismissed, as I understand.

25         MR. PALLAS:  It was my case, judge.

1          THE COURT:  Sorry?

2          MR. PALLAS:  That was my case.

3          THE COURT:  That was yours, okay.

4          As I understand it, the charges were dismissed

5     against Mr. Ball -- these were firearm-related charges --

6     because, like Mr. Wilson, these firearms were seized during a

7     search warrant in connection with January 6th, search warrant,

8     right.  Okay.

9          The government also cited U.S. v. Jeremy Brown,

10    another Middle District of Florida case, in which a defendant

11    had been convicted of possession of a firearm, but I think

12    that there was other -- and other weapons, I think.

13         MS. BLACKWELL:  I believe it may have been other

14    weapons, Your Honor, and that was actually convicted at a jury

15    trial.

16         THE COURT:  Okay.

17         MR. PALLAS:  Grenade.

18         THE COURT:  So that included a grenade.

19         MS. BLACKWELL:  Yes.

20         THE COURT:  So people who were prosecuted for having

21    grenades that were discovered as a result of a January 6th

22    case, those are pardoned as well.

23         MS. BLACKWELL:  That's correct.

24         MR. PALLAS:  Judge, he was a -- he's a -- a military

25    officer or former -- former Green Beret, actually, and the

1    search warrant in that case was only for two misdemeanors.

2              THE COURT:  Okay.  But I think he also -- correct me

3    if I'm wrong, did he not have a conviction for possession of

4    classified information?

5              MR. PALLAS:  Documents, yes.

6              MS. BLACKWELL:  Yes.

7              THE COURT:  So he was pardoned for that as well.

8              MS. BLACKWELL:  That's correct.

9              THE COURT:  The possession of classified

10   information, possession of a grenade, and firearms.

11             MS. BLACKWELL:  Yes.

12             THE COURT:  That's covered.

13             And then the Kelly case is the case that you talked

14   about involving the threat to an agent; is that right?

15             MS. BLACKWELL:  Correct.

16             THE COURT:  Okay.

17             MR. PALLAS:  There was one other cited, Your Honor,

18   Costianes.

19             THE COURT:  Yeah, that's the 4th Circuit case?

20             MR. PALLAS:  Yes.

21             THE COURT:  Remind me the facts of that case.

22             MR. PALLAS:  That was a search warrant that

23   discovered a weapon -- a firearm and drugs.

24             THE COURT:  Drugs.

25             MR. PALLAS:  And he was --

1          THE COURT:  Okay.

2          MR. PALLAS:  It was something -- it was drugs --

3    prescription drugs without a prescription and a firearm, and

4    he was charged under the same statute that Hunter Biden was, a

5    prohibited person, being a drug possessor.

6          THE COURT:  Okay.  So it sounds like a search that

7    uncovers anything, firearms, explosives, national security

8    information, drugs, child pornography, but only if the

9    government doesn't already know about related child

10   exploitation offenses, all of those will be covered by this

11   pardon.  There's really no limit to what's covered by this

12   pardon in terms of evidence discovered in someone's home as a

13   result of a January 6th search.

14         MS. BLACKWELL:  I believe that's the department's

15   position --

16         THE COURT:  I mean, that's just extraordinary.  It's

17   kind of a blanket pardon for offenses that can come out of

18   investigations that stemmed from items seized in one

19   investigation.

20         MR. PALLAS:  I'm sorry, Judge, may I say something,

21   you know, pardons themselves are extraordinary, you know, the

22   former president pardoned -- I think it was 37 people on death

23   row, or commuted --

24         THE COURT:  No, absolutely, pardon is an

25   extraordinary -- it's an extraordinary pow- -- it's

1    extraordinary authority, Mr. Pallas, I agree.  The president

2    could pardon again, you know, Dan Edwin Wilson for anything

3    he's ever done.  It's an extraordinary power.  The question is

4    what did he do on January 20th of 2025.  What is the meaning

5    of this pardon?  It's not that he doesn't have the power to

6    exercise his pardon in extraordinary ways, he certainly does.

7    It's --

8              MR. PALLAS:  On January 20th, 2025, he pardoned

9    Dan Edwin Wilson for this January 6th case and for the

10   Kentucky case.  That's clear.

11             THE COURT:  Well, that's not what the -- what I

12   determine the plain language of the pardon said or the

13   department determined that's what the plain language of the

14   pardon said.

15             MR. PALLAS:  But you don't have the authority to

16   determine that.  The pardon power is plenary.  You don't --

17   unlike --

18             THE COURT:  The decision to issue a pardon is

19   plenary.  I think the Court does have a role in interpreting a

20   pardon.

21             MR. PALLAS:  You don't, Judge.  You have to accept

22   it.  It's not like an act of Congress, where you have judicial

23   review and you can strike it down as unconstitutional.

24             THE COURT:  What do you say about Judge Pryor's

25   11th Circuit opinion?  What's your response to that or

1    Judge Mehta's opinion?  They're wrong?

2         MR. PALLAS:  I'll tell you exactly -- I'm going to

3    get to Judge Pryor's decision in a second, because the second

4    part of my argument is that because you have no ability to

5    modify or review or strike down a pardon, the fact is you

6    don't even have a right to interpret it, and I'll tell you

7    why, because President Trump pardoned this man for the

8    offense, and how do we know that?  Because he issued a pardon

9    and he's the executive, and the pardon can only come from the

10   president.  And the woman that's in the courtroom as an

11   Assistant U.S. Attorney is part of the executive branch, and

12   she's telling you what the judge -- what the president means

13   by this pardon.

14        In other words, we're in a situation which is very

15   unique.  We have pardons that are issued on day one of an

16   administration where the president, who does the pardoning, is

17   still the president.  For example, prior to President Biden

18   leaving office, he issued pardons.  He pardoned his son,

19   Hunter Biden.  If the Department of Justice wanted to charge

20   Hunter Biden, you know, you, as the judge, would have to

21   determine the scope or the application of that pardon.  That's

22   fine.  Why?  Because President Biden is no longer the

23   executive.

24        Here, President Trump is the executive.  A

25   representative of President Trump is in your courtroom telling

1    you what President Trump intended with this pardon.  She's

2    telling you that President Trump intended to pardon this man

3    for the January 6th case and the Kentucky case.

4              THE COURT:  Okay.  So I want to make --

5              MR. PALLAS:  It's not subject to interpretation,

6    Judge.

7              THE COURT:  I want to make sure I'm understanding

8    your argument.  You're saying that if an issue arose in a case

9    involving a defendant who was pardoned by President Biden, I,

10   as a Court, would have the ability to interpret that pardon

11   because he's no longer president.  But if he were president, I

12   would have no authority to interpret a pardon issued by

13   President Biden.

14             MR. PALLAS:  No, by President Trump.

15             THE COURT:  No, but you said a moment ago if -- I

16   thought you said, and maybe I misunderstood what you were

17   saying, but I thought you said if -- you could interpret a

18   pardon by President Biden because he's no longer president.

19   But that I can't --

20             MR. PALLAS:  Correct.

21             THE COURT:  So you're saying that if I had an issue

22   arise in one of my cases relating to a defendant who had been

23   pardoned in some respect, I could interpret President Biden's

24   pardon, but only because he's no longer president.

25             MR. PALLAS:  Correct.  And that's why *Andrews*

1    doesn't apply, because *Andrews* was a pardon by President Obama

2    in 2003, and reviewed in 2020.

3               THE COURT:  Okay.  So --

4               MR. PALLAS:  A Court, an Article III Court has the

5    right to review the scope of the pardon with the applicability

6    of the pardon.  But here, the applicability is not of your

7    concern, Your Honor, because the executive is speaking to

8    you --

9               THE COURT:  Okay.

10              MR. PALLAS:  -- today, telling you --

11              THE COURT:  I didn't note -- I didn't appreciate --

12   did Judge Pryor draw that distinction in his opinion, that he

13   could interpret it simply because President Obama was no

14   longer president?

15              MR. PALLAS:  No, because it's not an issue, but the

16   pardon -- I'm reading it -- it was from 2003.

17              THE COURT:  No, I understand, but Judge Pryor didn't

18   draw that distinction.

19              MR. PALLAS:  I don't know if he did or she did or

20   not.

21              THE COURT:  He.

22              MR. PALLAS:  No, actually, it's she.  There's two

23   Judge Pryors, there's Jill Prior and William Pryor.  Jill

24   Pryor wrote the opinion and William Pryor concurred, I think.

25   It's an unusual situation.  I'm in the 11th Circuit, Judge, so

1    I know a little bit about it.  But in any event, it's a 2003

2    pardon, of course the court -- there's no issue of whether a

3    Court can --

4                THE COURT:  Okay.  In the case before Judge Mehta --

5    and by the way, I think it is Judge Bill Pryor's opinion, but

6    check that out.  I think it is.  He wrote it, I think.  But in

7    the case before Judge Mehta, and I think this involved -- I

8    gave you the cite earlier, but I think it involved maybe --

9                MR. PALLAS:  Is that the one about the supervised

10   release?

11               THE COURT:  Right.  What was that defendant's name?

12               MR. PALLAS:  I don't remember.

13               THE COURT:  So in that case, I think a defense

14   attorney asked Judge Mehta to interpret this pardon in a

15   certain way, and he heard from the executive and he credited

16   the interpretation because he found it reasonable, but he

17   certainly was interpreting the language of President Trump's

18   pardon even though President Trump is not out of office.  So

19   was that erroneous for Judge Mehta to opine on the meaning of

20   President Trump's pardon?

21               MR. PALLAS:  No, it was erroneous for Judge Mehta to

22   require commuted -- it was commuted defendants.  They were not

23   Proud Boys but the Oath Keepers.  And he -- even though they

24   were commuted, Judge Mehta's thinking was that they still had

25   to comply with supervised release --

1          THE COURT:  No, but he reversed himself on that and

2     in doing so --

3          MR. PALLAS:  He reversed himself, correct.

4          THE COURT:  In doing so, he interpreted the pardon,

5     and he went through the analysis and determined that the

6     executive's interpretation of the pardon was reasonable, and

7     therefore, he accorded deference to it.  He undertook -- you

8     know, it seemed he applied traditional tools of statutory

9     interpretation.

10         MR. PALLAS:  But that's where the mistake is, Judge.

11    You're -- an Article III judge has no authority to interpret,

12    to modify, or to explain a pardon, especially a pardon that is

13    by an executive who is still the executive and a

14    representative of that executive is in your courtroom telling

15    you what the intent of the pardon was by the --

16         THE COURT:  I agree, the Court has no authority to

17    modify the pardon, that is true.  Does the executive have the

18    power to modify the pardon going forward?  Do you think that's

19    true, or does the executive have to issue a new pardon if the

20    executive wants to modify a pardon?

21         MR. PALLAS:  Judge, he's not modifying it.  He's --

22    he is telling his surrogate, who is in your courtroom, that

23    it's to be -- it's to be interpreted in the most expansive and

24    broad way that it is, and that's what's happening.

25         THE COURT:  Okay.  What if --

1          MR. PALLAS:  There's no need for a new pardon.

2          THE COURT:  What if the language of the pardon had

3     said, you know, Daniel Edwin Wilson is pardoned for conspiracy

4     to assault officers at the Capitol on January 6th, period,

5     full stop, that's all it said.

6          MR. PALLAS:  Actually, the indictment or the

7     information to which Mr. Wilson pled in this case gave a date

8     of, I think it was December 20th to January 6th, so right

9     there, even your interpretation --

10         THE COURT:  All right.

11         MR. PALLAS:  You can make an argument that it

12    doesn't apply to the January 6th conduct.

13         THE COURT:  Okay.  Now, all right, the --

14         MR. PALLAS:  No, seriously.

15         THE COURT:  You get the point.  If the pardon

16    applied to a specific conviction, if the president had said, I

17    pardon Mr. Wilson for this conviction, Count 1 of the

18    indictment, superseding information, whatever it was, period,

19    that's it, and if -- that's all the pardon said, are you

20    saying that if Ms. Blackwell came in here and said, no,

21    actually, that pardon includes the Kentucky possession of

22    firearm offenses from 2023, the Court accepts at face value

23    what she's saying because that was the president's intent,

24    despite the clear language of that pardon, to pardon him for

25    Count 1?  You're saying because she says so, like, then I have

1    to --

2            MR. PALLAS:  Basically -- basically, the language

3    isn't that narrow, but basically yes.  She is sitting there as

4    part of the executive.  The executive is still the executive.

5    He is telling -- he's directing his Department of Justice that

6    this is how I intended the pardon to be applied.  Did I know

7    every detail of every 1500 or 1600 defendants' cases, no, of

8    course he didn't.  But this is -- it was written, and there

9    were these loose ends which people are like we're scratching

10   our heads like how do we figure this out, and the way they

11   figure it out is clear, it's clear because the defendant

12   had -- the defendant has -- I'm sorry, the president has

13   plenary power to pardon people for whatever extraordinary

14   offense, it could be the most minimal misdemeanor, it could be

15   a horrible mass murder, he has the right to do that, and he

16   does it and this Court, nor any Court can review it.  They

17   don't review --

18            THE COURT:  Okay.  Let me ask you, Mr. Pallas, one

19   more question.  So if the pardon said, I pardon Mr. Wilson for

20   the conspiracy charge in Count 1, I do not pardon him for the

21   gun possession charges in Kentucky, period, and then

22   Ms. Blackwell came to this courtroom and said, actually, the

23   pardon doesn't say that, what he really meant was he meant to

24   say I pardoned him for both of these offenses.  Can the Court

25   take what she says at face value and say, despite the plain

1   language of the pardon, I'm told here that President Trump

2   intended something differently, so I'm going to correct the

3   pardon for him, or does he have to issue a new pardon?

4           MR. PALLAS:  Judge, it's -- we can stay here all day

5   thinking of different hypotheticals.

6           THE COURT:  But I'm just trying to see what the

7   outer limit to your argument is.

8           MR. PALLAS:  The outer limit is as follows:  The

9   pardon is broad enough for a reasonable person to look at it

10  and say, you know what, hey, I think that's related.  At least

11  it's related.

12          THE COURT:  Okay.

13          MR. PALLAS:  It's not -- it didn't happen on that

14  day.  It didn't -- you know, there are defendants -- there are

15  defendants that have been pardoned that weren't even on

16  Capitol Hill on January 6th.  Enrique Tarrio, he was in

17  Baltimore on January 6th and he's pardoned.  Jeremy Bertino

18  got injured and was in Baltimore, and he wasn't on

19  January 6th --

20          THE COURT:  I'm not questioning that the president

21  has extraordinary authority to pardon people.  I'm just

22  questioning whether he did -- whether he issued the pardon you

23  say he did.  And when you say it's a reasonable

24  interpretation, it sounds to me like you're backtracking and

25  saying yes, you do have some interpretive role here.

1          MR. PALLAS:  No, I'm just saying that because you're

2     making hypotheticals that are just completely contrary to what

3     it says, where I can -- I pardon Mr. Wilson for this count,

4     but I don't for that count, and then the president's surrogate

5     would come to court and tell you --

6          THE COURT:  But I'm pushing --

7          MR. PALLAS:  That would never happen, Judge.  That

8     would never happen.

9          THE COURT:  I'm pushing back because you're making

10     the extraordinary statement that the Court has no interpretive

11     role.  And so I'm challenging that.  Because I don't think

12     there's any authority for that proposition.

13          MR. PALLAS:  Well, the proposition is that the

14     pardon was issued, and the president intended to pardon this

15     defendant for both instances, both conducts, and the reason we

16     know that, the reason we know that for sure, is because -- you

17     know, Ms. Blackwell is not a rogue prosecutor.  She's not

18     coming in here and telling you something that hasn't gone up

19     the chain all the way to the White House.  The White House's

20     position is that the pardon covers both conduct, and you

21     can't -- and you cannot, you, Judge, I'm sorry, you cannot say

22     no to that.  You cannot deny the defendant -- the president's

23     pardon power.  He's the only one that can do it and he's done

24     it.  And he's telling you he did it.  He's telling you he did

25     it because his surrogate is there telling you that.  That's

1    how you know.

2              THE COURT:  All right.  Mr. Pallas, can you give me

3    any authority to support your position that the Court has no

4    interpretive role whatsoever?

5              MS. BLACKWELL:  Can I offer two case cites?

6              MR. PALLAS:  *Ex parte Garland*.

7              THE COURT:  Sorry?

8              MR. PALLAS:  *Ex parte Garland* is the Supreme Court

9    case.

10             THE COURT:  And what does *Ex parte Garland* say

11   exactly?

12             MR. PALLAS:  Saying that the defendants -- that the

13   president's pardon power is unlimited.

14             THE COURT:  I agree with that.

15             MR. PALLAS:  Okay.  Well --

16             THE COURT:  The fact that the president -- the fact

17   that the president, you know, has, again, extraordinary

18   authority does not necessarily mean the Court has no

19   interpretive authority.

20             MR. PALLAS:  Judge, let's see, I had a case up

21   here --

22             THE COURT:  All right.  Well, let me turn to

23   Ms. Blackwell, because she has a case she wants to offer.

24             MS. BLACKWELL:  If I may, Your Honor, my colleague

25   was able to send me Judge Pryor's decision, and I think

1    there's specifically a note in there that the Supreme Court

2    has ruled that deference should be accorded to the executive

3    agency's interpretation of an executive order it is charged

4    with administering.  So in this case, I would say that, you

5    know, we are being accorded that deference in interpreting the

6    pardon.  And then also *Robertson v. Gibson*, 759 F.3d 1351,

7    "Accordingly, we cannot read the pardon in a vacuum, as

8    Mr. Robertson suggests.  We must look to the nature and the

9    purpose of the pardon; namely, President Ford's clemency

10   program."

11            THE COURT:  All right.  But do either of those cases

12   suggest that the text doesn't control?

13            MS. BLACKWELL:  I think it's a reasonable

14   interpretation of the text.  And in this case, as Mr. Pallas

15   notes, you have representative of the executive agency

16   offering the interpretation that the president meant.

17            THE COURT:  All right.  And I've not decided this.

18   I decided it once, but I'm being asked to reconsider the

19   decision that I rendered, which was that the plain of the

20   pardon was clear, does not apply to these offenses.  The

21   government agreed with me at the time, but the government is

22   asking me to reconsider because the government no longer

23   thinks that the plain text of the pardon answers this

24   question.

25            And so there -- the government's saying there's some

1    ambiguity to the language.  Despite the position it took

2    earlier, it believes the language is ambiguous.  And the

3    government's saying it is reasonable to interpret it in a way

4    that applies to offenses that were charged as a result of

5    search warrants conducted as part of the January 6th

6    investigation for which the evidence -- for which the

7    government did not have pre-existing evidence relating to

8    similar offenses.

9            MS. BLACKWELL:  That is correct, Your Honor.

10            THE COURT:  Okay.  Anything more you can -- other

11    than those two cases you can provide to me with regard to the

12    amount of deference?  It sounds like you're not agreeing with

13    Mr. Pallas that there's no role for the Court, but you're

14    saying the Court -- and I agree, the Court does have to accord

15    deference.  The question is how much deference.

16            MS. BLACKWELL:  And I would think almost exclusive

17    deference when you were presented with an interpretation that

18    is reasonable such as this one by the current executive

19    branch.

20            THE COURT:  Exclusive deference, but that's not --

21    is that what the Pryor case says?

22            MS. BLACKWELL:  Because it's -- because this is a

23    reasonable interpretation.  I mean, the Pryor case was

24    definitely very differently postured from this.  So I would

25    think that, again, you know, this is the current executive

1    informing the Court as of the interpretation of this pardon.

2         THE COURT:  Okay.  What I would like from the

3    government, because we've done this informally, I'd like the

4    government in the next, you know, hour after this hearing, to

5    file with the Court the government's interpretation of the

6    pardon.  I want you to confirm whether you and I have stated

7    it correctly.

8         MS. BLACKWELL:  I would ask Your Honor for more time

9    than just an hour to --

10        THE COURT:  No.  No.  We had -- we've had these

11   motions, you know, filed for some time now.  There is a

12   meaning that existed on January 20th.  It's not out there in

13   the clouds somewhere.  There was a meaning at the time.  And

14   here we are, six weeks later, and we're needing more time to

15   tell me what the meaning of that pardon is.

16        MS. BLACKWELL:  And I think we have said that.  I

17   don't think -- I'm not going to get or be able to get

18   additional plain language that says the pardon covers "X."  We

19   are saying the pardon covers "X."  It covers "X" here, it

20   covers the Jeremy Brown case, it covers the Daniel --

21        THE COURT:  Okay.

22        MS. BLACKWELL:  -- case.

23        THE COURT:  But the -- again, the pardon isn't a

24   document that has, I pardon the January 6th defendants for all

25   the things that happened on January 6th at the Capitol, and

1  any other offenses for which I decide in the future it applies

2  to.  You agree, can't do that

3           MS. BLACKWELL:  And we're not doing that.  This is

4  the --

5           THE COURT:  Okay.  So there is -- there is a

6  meaning.

7           MS. BLACKWELL:  It is --

8           THE COURT:  -- that you're applying right now to

9  make these determinations.  And it is a -- it had to be formed

10  on January 20th.

11           MS. BLACKWELL:  It is the interpretation of that

12  pardon, and that's what we are doing here.

13           MR. PALLAS:  Judge, I think the --

14           THE COURT:  Just a minute, Mr. Pallas.  Just a

15  minute.

16           MR. PALLAS:  Okay.  I'm sorry.

17           THE COURT:  Say that again.

18           MS. BLACKWELL:  It is the interpretation.  I'm going

19  back to the *Andrews v. Warden*, that this is the interpretation

20  of that executive order, and that is what we have been

21  discussing.

22           THE COURT:  Okay.  So you want me -- what you're

23  saying is don't give you extra time to tweak this definition.

24  You want me to accept the definition.  You're speaking for the

25  executive branch here, and this is the meaning of the

1    January 20th, 2025 pardon.  I would have thought -- I would

2    have thought you wanted additional time.  I will accept this,

3    but I'm surprised that you don't want time to refine this.

4             MS. BLACKWELL:  But I am speaking as to this case,

5    and we've discussed how it applies to these circumstances and

6    other circumstances.  And I was very careful in our pleadings

7    to say that under these circumstances, the pardon applies.

8             THE COURT:  I know, but the -- there has to be -- I

9    think what you're saying, then, is that I have to just go to

10   the text of the pardon.

11            MS. BLACKWELL:  But as --

12            THE COURT:  And if I interpret the text, and I do --

13   my best reading of the text --

14            MS. BLACKWELL:  But that is where we get back to the

15   judicial role versus the executive role, and the judicial role

16   is to give deference to the executive.

17            THE COURT:  If it's reasonable.

18            MS. BLACKWELL:  And we are giving a reasonable

19   interpretation.

20            THE COURT:  But the reasonable interpret- -- I can't

21   just -- just itemizing two offenses in this offense, in this

22   case, two possession offenses in this case is not enough for

23   the Court to assess the reasonableness of the executive's

24   interpretation.

25            MS. BLACKWELL:  But in context of the other examples

1    we have given you.

2            THE COURT:  Okay.  So we've strung together how we

3    can make all these examples work together.  And again, like,

4    I'm not going to order it, but I will give you, you know, this

5    afternoon to file a revision to this.  You and I have pieced

6    together these different cases, and we've come up with a

7    interpretation that fits -- makes all of them work together,

8    because clearly, there's got to be -- in order for the

9    interpretation to be reasonable, it has to make sense in how

10    the government's applying it.  You agree with that.

11            MS. BLACKWELL:  So, Your Honor -- but Your Honor is

12    only looking at this case.

13            THE COURT:  No, I'm looking at the other cases

14    too.

15            MS. BLACKWELL:  But, Your Honor, you can't issue an

16    interpretation as to other cases.  It is only this case that

17    is in front of you.  So I guess I will push back on that.

18            THE COURT:  Okay.  So, agreed, but in assessing the

19    reasonableness of the interpretation you're providing the

20    Court here, if I know next door you're taking the opposite

21    interpretation, are you saying that that different litigating

22    position in another case is not something the Court can

23    consider in deciding whether to give deference to your

24    interpretation?  Surely, I can.

25            MS. BLACKWELL:  Yes, but I don't think there is

1    another courtroom next door where we're taking a different

2    position.  We are being consistent in these positions.

3            THE COURT:  But -- and the way you're being

4    consistent is to interpret the pardon in the way you and I

5    have discussed here.  That's how it all makes sense.  That's

6    how it all strings together.  When you take these five cases

7    and you say, well, we're proceeding on the child pornography

8    case, you're proceeding on the child pornography case because

9    you say you had pre-existing knowledge of related sexual

10    offenses that makes that case different.  So you're not

11    proceeding on the others.  You're not proceeding on the

12    grenade and the national security information or any of those

13    because you didn't know about them ahead of time.

14            MS. BLACKWELL:  Know about them being the

15    contraband, not that we didn't know about those cases; that's

16    correct, Your Honor.

17            THE COURT:  Yeah.

18            MS. BLACKWELL:  I guess, you know, again, I struggle

19    because we are at an "as applied" instance here.  There are

20    very few cases where any judges are considering the

21    interpretation of this pardon.  This is uniquely postured

22    because, actually, the defense attorney filed a motion to have

23    this Court consider.  Otherwise, this may not have ever been

24    presented, and this might have been like a Jeremy Brown

25    case --

1          THE COURT:  Well, I did ask you.

2          MS. BLACKWELL:  That is correct.

3          THE COURT:  Because BOP, as you said at the time,

4   erroneously released Mr. Wilson from prison when he had nearly

5   five years to serve on gun charges in Kentucky.

6          MS. BLACKWELL:  That is correct.  And again --

7          THE COURT:  And he was incorrectly released,

8   erroneously, and so I asked you for your position why

9   shouldn't he go back to prison.  And you said we agree, he

10  should go back to prison.  So it's not -- the government has

11  created this issue itself.

12         MS. BLACKWELL:  Understood.

13         THE COURT:  And so, I mean, the Court does have to

14  assess the reasonableness of your position, and is that not

15  informed by all these different positions that you're

16  taking.

17         MS. BLACKWELL:  Well, I would go back again to the

18  other examples, the enormity of the pardon that was granted in

19  these cases, and again, it is an extraordinary power, and

20  there were a lot of defendants that this power applied to.

21  And so, you know, again, understanding, from the department's

22  perspective, the presidential intent has taken some time when

23  it comes to specific cases.  And again, our apologies for the

24  interpretation from I think it was three weeks ago now, but

25  again, given these other cases which are very similarly timed

1    to Mr. Wilson's example now, I think we can give clarity to
2    what the presidential intent was and is.
3            THE COURT:  All right.  Well, you agree that the
4    president can't issue a pardon that violates the
5    Constitution.
6            MS. BLACKWELL:  I would agree with that.  It is an
7    extraordinary power, but it can't usurp the Constitution, that
8    is correct.
9            THE COURT:  Okay.  And who would decide whether the
10   pardon violated the Constitution?  Would that be the president
11   or the Court?
12           MR. PALLAS:  Nobody, Judge.  You wouldn't -- you
13   don't have the right to review the pardon for
14   constitutionality.  This is not *Marbury v. Madison*.
15           THE COURT:  Okay.  Well --
16           MR. PALLAS:  You can review acts of Congress.  You
17   cannot review the president's plenary power of pardoning
18   convictions.  You can --
19           THE COURT:  Okay.
20           MR. PALLAS:  -- go back and look at all of Hunter
21   Biden -- I mean, President Biden's prospective pardons for
22   14 years ago and they're too broad, nobody can do that.  It's
23   done, you have to accept it.  Our --
24           THE COURT:  I'm accepting the pardon.  I'm accepting
25   the language of the pardon.  The question is how far afield

1    from the language can -- can it go.

2              MR. PALLAS:  The pardon --

3              THE COURT:  So --

4              MR. PALLAS:  -- says related.  And can you say --

5    can you say that the seizure of firearms in Mr. Wilson's home

6    on a day that a search with probable cause for the January 6th

7    and searching for evidence of January 6th were discovered when

8    that search warrant was served, can you say that those aren't

9    related?  Can you say those firearms are not related to

10   January 6th in any way?  I mean, just use the word "related"

11   in the most broadest term.  I mean, the relationship can go

12   from 1 percent to 99 percent.  It's related, though.  It is

13   related.  There would not have been a firearm case because

14   there would not have been a search of his residence absent or

15   but for the J6th search warrant.  It's related.  That's the

16   end of the inquiry.

17             THE COURT:  All right.  Ms. Blackwell, I'm informed

18   that in *Brown*, the classified information was known to an

19   Air Force Office of Special Investigations back in 2017.  But

20   that's covered by the pardon.

21             MS. BLACKWELL:  (Nodding.)

22             THE COURT:  So --

23             MR. PALLAS:  It's even broader.  It's broader than

24   Your Honor thought at the beginning --

25             THE COURT:  That's why I'm asking for some

1    additional thoughts on this.  I'll give you till the end of

2    the day today, close of business.  If the government doesn't

3    want to, by 5:00 p.m., supplement its position here, that's

4    fine.  I'll go with what we discussed here.

5                Okay.  Anything else, Ms. Blackwell?  You're in a

6    very difficult position.

7                MS. BLACKWELL:  Not from the government.

8                THE COURT:  Appreciate your attempts to answer the

9    Court's questions.

10                MS. BLACKWELL:  Thank you, Your Honor.

11                THE COURT:  All right.

12                MR. PALLAS:  Can we address Mr. Wilson's surrender

13    date.

14                THE COURT:  Yes.  Yes, just one moment.

15                Let me just ask you, Ms. Blackwell, do you agree

16    with the defense that the 2255, alleging the due process

17    violation, is appropriate vehicle by which the defense should

18    raise this argument?  I know he's not in custody, but I think

19    there are cases suggesting that the 2255 is appropriate where

20    a sentence has been imposed.  You agree?

21                MS. BLACKWELL:  Yes, Your Honor, we agree --

22                THE COURT:  You agree it's a due process violation?

23                MS. BLACKWELL:  It's the correct procedural vehicle

24    for this matter.

25                THE COURT:  There would be a due process violation

1    to order him to return to prison if the pardon does, in fact,

2    cover this offense.

3              MS. BLACKWELL:  Correct.

4              THE COURT:  All right.

5              Yes, so Mr. Wilson is at this point subject to an

6    order to report tomorrow to the Bureau of Prisons.  The Court

7    is going to take this under advisement.  The Court expects to

8    issue an opinion shortly.

9              If the Court were to deny the defendant's motion, I

10   take it Mr. Pallas or the government would appeal the Court,

11   in which case the Court would be inclined to stay any order

12   for Mr. Wilson to report, at least long enough for you to seek

13   a stay in the circuit.

14             So all of that means -- and I haven't decided yet

15   what I'm going to rule.  But in the worst-case scenario for

16   Mr. Wilson, that means, in all likelihood, he doesn't have to

17   report tomorrow, because I would stay the order just long

18   enough for you to appeal, which I expect you would; is that

19   right, Mr. Pallas?

20             MR. PALLAS:  Yes, Your Honor.  We would probably

21   file a notice of appeal immediately and then, I guess, a stay

22   along with -- you know, as long as the notice of appeal was

23   filed, you would stay it pending the decision --

24             THE COURT:  Well, I would give you short time.

25   You'd have to file a motion for stay before the Court of

```
 1   Appeals.
 2              MR. PALLAS:  I mean, well, so you wouldn't -- you
 3   would not --
 4              THE COURT:  Yeah, I --
 5              MR. PALLAS:  Well, if we file a notice of appeal,
 6   aren't you going to --
 7              THE COURT:  I'm just not sure how -- I don't know,
 8   you know, the length of time for an administrative stay that's
 9   appropriate.
10              MR. PALLAS:  30 days, I mean, at least -- we're not
11   going to --
12              THE COURT:  I don't know that -- I'm not certain I
13   have that amount of -- that authority to stay for that period
14   of time.
15              MR. PALLAS:  Judge, I mean, I think it's pretty
16   obvious it's a good-faith issue here.
17              THE COURT:  No, I mean, for sure you can seek a
18   stay.  I'm just not sure if I'm the one who should decide it
19   or the Court of Appeals.
20              MR. PALLAS:  Well, I don't think any party is going
21   to object to the stay.
22              THE COURT:  All right.  What's the government's
23   position?
24              MS. BLACKWELL:  We would not object to a stay, Your
25   Honor.
```

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

1           THE COURT:  Okay.  All right.  Well, that's good to

2    know.

3           All right.  I'll order the government to supplement

4    the record, if it desires, on or before 5:00 p.m. today.

5           MS. BLACKWELL:  Yes, Your Honor.

6           THE COURT:  Okay.

7           MS. BLACKWELL:  Okay.

8           THE COURT:  All right.  Thank you, all.

9           MS. BLACKWELL:  Thank you.

10           MR. PALLAS:  Thank you, Your Honor.

11           (The proceedings were concluded at 1:05 p.m.)

12

13           I, Christine Asif, RPR, FCRR, do hereby certify that
      the foregoing is a correct transcript from the stenographic
14    record of proceedings in the above-entitled matter.

15           _____/s/_____
                 Christine T. Asif
16             Official Court Reporter

17

18

19

20

21

22

23

24

25

< Dates >.
23-427-1,
  2:3.
August of
  3:5.
December 20th
  44:8.
February 6th,
  4:21.
January  4:12,
  4:19, 12:17,
  15:21, 21:22,
  22:2, 25:19,
  33:8, 46:16,
  51:12.
January 20th
  12:12, 17:7,
  31:16, 32:4,
  52:10.
January 20th of
  2025.   10:9,
  16:3, 38:4.
January 20th,
  6:15, 7:6,
  8:8, 31:2.
January 20th,
  2025  53:1.
January 20th,
  2025,
  38:8.
January 20th,
  2025.
  12:15.
January 6th
  4:16, 6:3,
  6:10, 14:3,
  14:6, 18:14,
  20:13, 20:14,
  22:5, 22:6,
  22:10, 22:13,
  23:6, 23:12,
  23:20, 24:12,
  25:9, 25:20,
  27:6, 27:18,
  31:18, 32:23,
  33:12, 33:17,
  33:22, 35:21,
  37:13, 38:9,
  40:3, 44:12,
  46:17, 46:19,

50:5, 51:24,
  51:25, 58:6,
  58:7,
  58:10.
January 6th of
  2021
  32:19.
January 6th of
  2021,   3:15,
  3:21, 16:11,
  18:24.
January 6th,
  14:23, 25:2,
  35:7, 44:8.
January 6th,
  2021.
  8:12.
January 6th,
  period,
  44:4.
May  2:6.
.
.
< 0 >.
00 59:3,
  62:4.
05 62:11.
.
.
< 1 >.
1 44:17, 44:25,
  45:20, 58:12,
  62:11.
1072 29:11.
11:35 a.m.
  1:13.
11th 28:13,
  29:25, 38:25,
  41:25.
1351 49:6.
14 57:22.
1500 45:7.
1600 45:7.
.
.
< 2 >.
20001 1:46.
2003 41:2,
  41:16,
  42:1.

2017 58:19.
202 1:47.
2020 41:2.
2023 4:15,
  8:18, 14:17,
  44:22.
2025 1:12,
  30:7.
20530 1:28.
20th 51:12.
2255 59:16,
  59:19.
2420 1:35.
25-0545-DLF
  1:6.
.
.
< 3 >.
30 61:10.
309111 30:8.
33145 1:36.
333 1:45.
354-3247
  1:47.
37 37:22.
.
.
< 4 >.
4th 1:27,
  36:19.
.
.
< 5 >.
5 59:3, 62:4.
555 1:27.
.
.
< 6 >.
6th 4:12, 4:19,
  12:17, 21:22,
  22:2, 33:8,
  46:16.
6th-gathered
  25:19.
6th-related
  15:21.
.
.
< 7 >.
759 49:6.

.
.
< 9 >.
958 29:11.
99 58:12.
_____/s/___
  _____
  62:17.
.
.
< A >.
A. 1:34.
ability 39:4,
  40:10.
able 48:25,
  51:17.
above-entitled
  62:15.
absent 58:14.
absolutely
  37:24.
accept 20:1,
  20:9, 38:21,
  52:24, 53:2,
  57:23.
accepting
  57:24.
accepts
  44:22.
accord 34:2,
  34:10,
  50:14.
accorded 43:7,
  49:2, 49:5.
Accordingly
  49:7.
act 38:22.
ACTION 1:5.
actions
  27:17.
activities
  14:3.
acts 57:16.
actual 11:10,
  11:13.
Actually 4:18,
  8:4, 12:11,
  14:7, 32:21,
  35:14, 35:25,
  41:22, 44:6,

44:21, 45:22,
 55:22.
ad 17:10.
add 5:5, 25:6,
 26:11,
 31:24.
additional
 16:12, 51:18,
 53:2, 59:1.
address
 59:12.
adds 15:12.
administering
 49:4.
administration
 39:16.
administrative
 61:8.
adult 24:12.
advisement
 60:7.
advocate
 28:7.
affected
 9:25.
affirmed
 8:22.
afield 57:25.
afternoon
 54:5.
agency 28:24,
 29:17, 49:3,
 49:15.
agent 33:13,
 36:14.
agents 27:10,
 32:22,
 33:15.
ago 3:1, 5:2,
 9:22, 11:7,
 19:2, 21:21,
 40:15, 56:24,
 57:22.
agree 6:21,
 6:24, 6:25,
 7:5, 16:18,
 16:19, 18:5,
 27:22, 29:18,
 38:1, 43:16,
 48:14, 50:14,

52:2, 54:10,
 56:9, 57:3,
 57:6, 59:15,
 59:20, 59:21,
 59:22.
Agreed 18:17,
 49:21,
 54:18.
agreeing
 50:12.
ahead 55:13.
Air 58:19.
alleging
 59:16.
allow 14:1.
almost 50:16.
already 23:2,
 24:17,
 37:9.
alternative
 17:23.
Although 2:18,
 4:15.
ambiguity
 50:1.
ambiguous 11:6,
 11:7, 30:23,
 50:2.
America 1:5,
 2:3.
amount 9:24,
 50:12,
 61:13.
analogized
 28:23.
analysis 14:22,
 20:21,
 43:5.
Andrews 29:1,
 29:11, 40:25,
 41:1,
 52:19.
answer 7:14,
 19:19, 21:2,
 21:3, 59:8.
answers
 49:23.
apart 27:18,
 33:9.
apologies

56:23.
apologize
 30:16.
appeal 60:10,
 60:18, 60:21,
 60:22,
 61:5.
Appeals 61:1,
 61:19.
appearance
 2:5.
APPEARANCES
 1:23.
appearing
 2:7.
applicability
 41:5, 41:6.
application
 39:21.
applied 20:10,
 20:12, 21:6,
 21:7, 31:6,
 31:8, 43:8,
 44:16, 45:6,
 55:19,
 56:20.
applies 4:11,
 8:10, 12:15,
 13:16, 17:9,
 32:12, 50:4,
 52:1, 53:5,
 53:7.
apply 17:5,
 18:13, 27:15,
 33:10, 34:4,
 41:1, 44:12,
 49:20.
applying 17:20,
 20:22, 52:8,
 54:10.
Appreciate
 41:11,
 59:8.
approach 2:4.
appropriate
 59:17, 59:19,
 61:9.
approximately
 3:1.
argue 7:11,

17:12, 26:21,
 32:12.
argued 34:15.
arguing 8:3,
 8:5, 14:8.
argument 10:25,
 11:1, 11:10,
 13:7, 14:21,
 17:15, 19:22,
 19:24, 39:4,
 40:8, 44:11,
 46:7,
 59:18.
arguments
 10:19.
arise 32:23,
 40:22.
arising
 15:14.
arose 40:8.
around 4:21.
Article 41:4,
 43:11.
articulate
 15:19.
articulated
 15:18.
aside 5:10,
 15:10, 18:25,
 29:13.
Asif 1:41,
 62:13,
 62:18.
assassinate
 32:22,
 33:1.
assault 18:23,
 18:24,
 44:4.
assess 53:23,
 56:14.
assessing
 54:18.
assist 27:23.
Assistant
 39:11.
attached
 12:3.
attempt
 32:12.

attempts
  59:8.
attention
  27:3.
Attorney 1:26,
  12:1, 39:11,
  42:14,
  55:22.
attorneys
  10:5.
Auer 34:11.
Auer-kisor
  29:15,
  34:4.
authorities
  24:15.
authority 7:10,
  16:4, 17:14,
  19:10, 31:11,
  38:1, 38:15,
  40:12, 43:11,
  43:16, 46:21,
  47:12, 48:3,
  48:18, 48:19,
  61:13.
automatic
  22:1.
Avenue 1:45.
aware 2:24,
  6:8, 22:16,
  24:15, 24:17,
  26:8, 26:9,
  26:14, 27:16,
  30:9, 31:21,
  32:9, 33:7.
.
.
< B >.
Back 10:8,
  11:2, 11:12,
  12:25, 19:15,
  20:19, 21:6,
  24:13, 27:1,
  27:4, 28:2,
  29:18, 47:9,
  52:19, 53:14,
  54:17, 56:9,
  56:10, 56:17,
  57:20,
  58:19.

backtracking
  46:24.
Ball 34:23,
  35:5.
Baltimore
  46:17,
  46:18.
based 14:2,
  23:11.
Basically
  22:12, 45:2,
  45:3.
bear 2:13.
became 33:7.
become 7:2,
  7:4.
beginning
  58:24.
behalf 2:7,
  2:11, 29:5.
believe 3:1,
  3:3, 5:13,
  8:20, 12:1,
  29:20, 32:13,
  35:13,
  37:14.
believed
  8:19.
believes 9:4,
  50:2.
Beret 35:25.
Bertino
  46:17.
best 53:13.
beyond 17:4.
Biden 37:4,
  39:17, 39:19,
  39:20, 39:22,
  40:9, 40:13,
  40:18, 40:23,
  57:21.
Bill 42:5.
bit 12:22,
  24:8, 42:1.
BLACKWELL 1:25,
  2:7, 2:8,
  2:9, 4:4,
  13:3, 13:15,
  15:19, 25:11,
  26:1, 27:22,

28:22, 44:20,
  45:22, 47:17,
  48:23, 51:22,
  55:18, 58:17,
  59:5, 59:15,
  62:7.
blank 6:19.
blanket
  37:17.
blanks 6:19.
bold 15:13.
BOP 29:8,
  56:3.
borrow 14:21.
bound 19:7.
Boys 42:23.
branch 21:1,
  29:20, 29:21,
  39:11, 50:19,
  52:25.
bringing
  4:16.
broad 8:8,
  11:9, 21:16,
  21:18, 21:20,
  28:4, 43:24,
  46:9,
  57:22.
broader 13:8,
  14:10, 34:17,
  58:23.
broadest
  58:11.
brought 10:4,
  21:24,
  27:3.
Brown 35:9,
  51:20, 55:24,
  58:18.
Bureau 2:17,
  29:3, 60:6.
business 29:5,
  59:2.
but-for
  14:22.
.
.
< C >.
C. 1:11,
  1:46.

cabining
  28:4.
called 5:14.
candor 5:13.
Capitol 4:12,
  4:16, 6:5,
  8:12, 8:14,
  9:13, 12:17,
  14:18, 21:22,
  44:4, 46:16,
  51:25.
Capitol.
  14:15.
caption
  22:17.
capture 9:16.
careful 6:7,
  20:7, 53:6.
Carolina 22:16,
  32:10.
cause 58:6.
caveat 7:14,
  31:24.
certain 42:15,
  61:12.
certainly 4:15,
  30:1, 30:11,
  30:14, 31:7,
  33:21, 38:6,
  42:17.
certificate
  3:3, 11:11,
  11:13, 11:15,
  11:19, 11:23,
  11:24, 12:13,
  13:7, 14:9.
certify
  62:13.
chain 47:19.
challenging
  47:11.
change 7:7,
  16:4, 32:6.
changes 7:11.
charge 39:19,
  45:20.
charged 22:4,
  23:5, 25:8,
  26:8, 26:9,
  26:15, 26:19,

27:3, 31:17,
37:4, 49:3,
50:4.
charges 4:22,
16:13, 33:24,
34:23, 35:4,
35:5, 45:21,
56:5.
check 42:6.
Child 22:23,
22:24, 23:11,
23:14, 23:15,
23:19, 24:1,
24:17, 24:19,
24:23, 25:2,
25:14, 27:4,
37:8, 37:9,
55:7, 55:8.
children
24:1.
Christine 1:41,
62:13,
62:18.
Circuit 28:13,
29:25, 36:19,
38:25, 41:25,
60:13.
circumstances
3:18, 20:3,
20:5, 20:8,
21:7, 32:15,
53:5, 53:6,
53:7.
cite 29:2,
42:8.
cited 16:9,
17:4, 28:25,
30:1, 34:21,
35:9,
36:17.
cites 48:5.
clarifying
9:19.
clarity 2:21,
3:9, 8:25,
57:1.
classified
36:4, 36:9,
58:18.
clear 3:24,

5:23, 7:4,
8:10, 9:21,
13:1, 15:23,
19:1, 27:20,
34:14, 38:10,
44:24, 45:11,
49:20.
clearer 7:2.
clearly 5:20,
15:18, 16:11,
54:8.
clemency
49:9.
CLERK 13:13.
close 59:2.
clouds 51:13.
colleague 21:3,
48:24.
COLUMBIA 1:2.
Columbia
1:44.
comes 56:23.
comfortable
21:11.
coming 47:18.
committed
19:12.
communications
24:13.
commuted 37:23,
42:22,
42:24.
complete
4:23.
completely
21:13, 32:19,
47:2.
comply 42:25.
computer-aided
1:50.
concern 10:3,
41:7.
concluded
62:11.
concurred
41:24.
conduct 32:18,
33:9, 34:20,
44:12,
47:20.

conducted 22:9,
23:6, 25:8,
31:18,
50:5.
conducts
47:15.
confined
20:8.
confirm 51:6.
Congress 38:22,
57:16.
connection
35:7.
consider 54:23,
55:23.
considering
29:1, 29:3,
55:20.
consistent
3:22, 55:2,
55:4.
conspiracy
18:24, 32:22,
33:1, 44:3,
45:20.
Constitution
57:5, 57:7,
57:10.
constitutional
7:9.
constitutionali
ty 57:14.
consultation
17:1.
context 29:7,
53:25.
Contitution
1:45.
contraband
3:16, 3:19,
14:6, 15:21,
33:7, 33:23,
55:15.
contradicting
30:15.
contrary 5:17,
47:2.
control
49:12.
Convicted 13:6,

13:8, 13:19,
13:20, 13:21,
14:4, 14:11,
14:13, 14:16,
35:11,
35:14.
conviction
8:16, 18:15,
18:17, 19:4,
19:6, 19:8,
36:3, 44:16,
44:17.
Convictions
4:11, 4:22,
5:2, 6:2,
6:4, 8:10,
8:13, 8:15,
9:10, 9:16,
10:23, 12:16,
13:7, 13:9,
13:16, 13:22,
15:14, 16:13,
57:18.
convince
16:5.
Coral 1:35.
correctly
51:7.
Costianes
36:18.
Counsel 2:15,
32:11.
Count 44:17,
44:25, 45:20,
47:3, 47:4.
couple 5:2,
21:20.
course 29:5,
42:2, 45:8.
courtroom
39:10, 39:25,
43:14, 43:22,
45:22,
55:1.
Courts 29:9,
30:9.
cover 3:21,
5:9, 9:4,
17:3, 18:16,
18:21, 19:21,

19:25, 22:24,
60:2.
covered 3:4,
5:7, 6:4,
6:10, 16:22,
19:4, 19:16,
19:18, 21:17,
25:20, 36:12,
37:10, 37:11,
58:20.
covers 16:9,
16:11, 19:6,
33:23, 47:20,
51:18, 51:19,
51:20.
craft 21:10,
27:20.
crafted
27:15.
created
56:11.
credited
42:15.
crime 19:12,
33:1, 33:5.
crimes 19:9.
CRIMINAL 1:5,
2:2.
CSAM 22:18,
22:21,
23:19.
current 2:22,
50:18,
50:25.
currently 26:8,
26:9,
26:15.
custody
59:18.
.
.
< D >.
Dabney L.
Friedrich
1:18.
Dan 2:3, 2:11,
19:9, 19:11,
38:2, 38:9.
DAN EDWIN
WILSON

1:10.
Daniel 12:14,
44:3,
51:20.
date 4:15,
8:18, 9:20,
19:1, 31:7,
44:7,
59:13.
day 11:24,
26:4, 26:24,
39:15, 46:4,
46:14, 58:6,
59:2.
days 9:22,
11:6,
61:10.
DC 1:28.
death 37:22.
decide 52:1,
57:9,
61:18.
decided 49:17,
49:18,
60:14.
deciding
54:23.
decision 38:18,
39:3, 48:25,
49:19,
60:23.
deemed 30:6.
deems 34:5.
default 11:2,
20:19,
29:19.
Defendant 1:12,
1:33, 2:16,
2:17, 2:18,
2:20, 3:4,
3:9, 14:22,
18:2, 18:3,
18:4, 24:12,
24:21, 24:23,
25:20, 34:23,
35:10, 40:9,
40:22, 42:11,
45:11, 45:12,
47:15, 47:22,
60:9.

defendants
3:23, 3:25,
20:13, 20:14,
42:22, 45:7,
46:14, 46:15,
48:12, 51:24,
56:20.
defense 10:5,
12:1, 15:1,
15:7, 32:11,
33:11, 34:15,
42:13, 55:22,
59:16,
59:17.
defer 9:6.
deference 7:20,
29:3, 29:16,
30:11, 34:1,
34:4, 34:8,
34:10, 34:11,
34:12, 43:7,
49:2, 49:5,
50:12, 50:15,
50:17, 50:20,
53:16,
54:23.
deferred
30:5.
deferring
30:11.
definitely
7:14, 34:16,
50:24.
definition
5:24, 15:18,
15:19, 15:23,
16:2, 16:3,
16:21, 16:24,
21:10, 52:23,
52:24.
degree 7:20.
demonstrated
28:3.
deny 47:22,
60:9.
Department
2:19, 2:20,
3:18, 3:23,
3:25, 5:8,
7:1, 7:17,

7:22, 9:21,
17:1, 17:20,
19:17, 19:20,
20:21, 20:22,
21:3, 26:22,
27:3, 29:13,
31:10, 31:20,
32:13, 37:14,
38:13, 39:19,
45:5,
56:21.
depending
26:4.
describing
18:23.
desires 62:4.
Despite 19:5,
44:24, 45:25,
50:1.
detail 45:7.
detailed
11:11.
determination
16:22, 17:18,
19:11.
determinations
52:9.
determine 10:1,
34:13, 38:12,
38:16,
39:21.
determined
20:14, 38:13,
43:5.
developed
5:16.
different 7:10,
9:5, 12:20,
13:21, 16:16,
29:6, 29:25,
32:19, 46:5,
54:6, 54:21,
55:1, 55:10,
56:15.
differently
46:2,
50:24.
difficult
59:6.
difficulty

28:4.
directing
    45:5.
disagree 10:9,
    10:11.
disagrees
    19:25.
discern 6:16.
discovered
    35:21, 36:23,
    37:12,
    58:7.
discuss
    28:18.
discussed 4:16,
    53:5, 55:5,
    59:4.
discussing
    52:21.
dismissed 3:12,
    34:24,
    35:4.
distinction
    13:23, 32:16,
    41:12,
    41:18.
District 1:1,
    1:2, 1:19,
    1:43, 1:44,
    4:14, 8:18,
    8:22, 34:22,
    35:10.
divorced
    21:13.
docket 18:2.
document 6:20,
    51:24.
Documents
    36:5.
doing 29:14,
    43:2, 43:4,
    52:3,
    52:12.
done 38:3,
    47:23, 51:3,
    57:23.
door 54:20,
    55:1.
down 38:23,
    39:5.

draft 28:5.
drafted
    16:25.
drafting
    20:23.
draw 25:16,
    32:16, 41:12,
    41:18.
dribble
    17:10.
drug 37:5.
Drugs 3:17,
    36:23, 36:24,
    37:2, 37:3,
    37:8.
due 59:16,
    59:22,
    59:25.
during 23:12,
    35:6.
duty 28:5.
.
.
< E >.
earlier 4:9,
    28:9, 42:8,
    50:2.
Edward 27:16.
Edwin 2:3,
    2:11, 12:14,
    19:9, 19:11,
    38:2, 38:9,
    44:3.
egregious
    26:5.
either 3:12,
    22:5, 23:19,
    49:11.
embrace 14:25,
    15:1.
emergency
    2:16.
end 58:16,
    59:1.
ends 45:9.
enforcement
    3:16,
    14:23.
enormity
    56:18.

enough 19:10,
    21:15, 21:17,
    46:9, 53:22,
    60:12,
    60:18.
Enrique
    46:16.
entered 6:15.
entrusted
    29:22.
erroneous
    42:19,
    42:21.
erroneously
    56:4, 56:8.
especially
    43:12.
Esquire 1:25,
    1:33.
essentially
    7:8.
established
    6:14.
event 42:1.
events 4:11,
    6:5, 6:9,
    8:11, 8:14,
    8:15, 9:10,
    9:12, 12:16,
    13:21, 13:22,
    14:11, 14:14,
    14:17, 21:21,
    22:4, 32:19,
    34:17.
evidence 3:14,
    4:18, 6:2,
    16:10, 16:12,
    21:24, 22:2,
    23:7, 23:9,
    24:5, 25:10,
    25:13, 25:19,
    31:19, 33:8,
    37:12, 50:6,
    50:7, 58:7.
evolve 6:18,
    10:4.
evolved 31:3,
    31:6.
Ex 48:6, 48:8,
    48:10.

exactly 5:24,
    39:2,
    48:11.
example 3:13,
    34:17, 39:17,
    57:1.
examples 16:9,
    53:25, 54:3,
    56:18.
exchange
    24:14.
exchanging
    24:21.
exclude 5:1.
excluded
    4:24.
excludes
    10:23.
exclusion
    30:11.
Exclusive
    19:10, 50:16,
    50:20.
excuse 8:1.
execute 18:3.
executed
    3:20.
exercise 7:9,
    18:1, 38:6.
existed
    51:12.
existing
    23:2.
expansive 9:9,
    11:13,
    43:23.
expect 32:6,
    60:18.
expects 60:7.
expert 7:15,
    20:19,
    20:20.
experts 20:24,
    21:1.
explain
    43:12.
explicit
    24:14.
exploitation
    23:15, 23:20,

23:25, 24:24,
  25:14, 27:10,
  37:10.
explosives
  37:7.
expressed
  21:14.
extend 14:4.
extent 21:13.
extenuating
  32:14.
extra 52:23.
extraordinary
  37:16, 37:21,
  37:25, 38:1,
  38:3, 38:6,
  45:13, 46:21,
  47:10, 48:17,
  56:19,
  57:7.
.
.
< F >.
F.3d 29:11,
  49:6.
face 44:22,
  45:25.
fact 4:5, 6:15,
  19:21, 32:9,
  39:5, 48:16,
  60:1.
facts 18:13,
  26:5,
  36:21.
Fair 10:12,
  13:5, 19:9,
  21:15, 22:14,
  22:15, 23:8,
  24:6, 24:7,
  31:5.
fairly 23:17.
familiar 28:15,
  28:16.
far 57:25.
faulting
  30:19.
FBI 33:15.
FCRR 1:41,
  62:13.
February 26th

1:12.
federal
  18:24.
feel 10:8.
female 24:13.
few 18:7,
  55:20.
figure 45:10,
  45:11.
file 2:25,
  51:5, 54:5,
  60:21, 60:25,
  61:5.
filed 4:5,
  12:1, 12:4,
  12:5, 12:6,
  12:7, 51:11,
  55:22,
  60:23.
filing 3:7,
  5:23, 15:7,
  15:24, 33:11,
  34:22.
filings
  20:21.
fill-in-the
  6:19.
fine 39:22,
  59:4.
firearm 16:1,
  20:1, 35:11,
  36:23, 37:3,
  44:22,
  58:13.
firearm-related
  35:5.
firearms 3:4,
  3:17, 3:19,
  4:13, 4:14,
  4:15, 4:16,
  4:19, 4:22,
  8:17, 8:21,
  9:3, 14:24,
  21:25, 33:4,
  35:6, 36:10,
  37:7, 58:5,
  58:9.
first 2:19,
  19:19,
  34:13.

first-line
  19:22.
fits 28:8,
  54:7.
five 19:2,
  55:6, 56:5.
fixed 17:7,
  17:8, 26:6,
  27:24, 27:25,
  31:2.
FL 1:36.
flipped 5:12.
Florida 34:23,
  35:10.
focusing 7:4.
follows 46:8.
for. 13:7.
Force 58:19.
Ford 49:9.
foregoing
  62:14.
forgive
  22:17.
formed 7:6,
  16:2, 17:7,
  52:9.
former 13:25,
  35:25,
  37:22.
forth 5:19,
  24:14.
forward
  43:18.
found 3:19,
  25:2, 27:11,
  42:16.
front 54:17.
full 44:5.
function 18:8,
  18:10, 18:11,
  29:20.
future 52:1.
.
.
< G >.
Garland 48:6,
  48:8,
  48:10.
gave 42:8,
  44:7.

geography
  21:23.
George 1:33,
  1:34, 2:10.
Gibson 49:6.
give 8:19,
  29:2, 29:15,
  34:4, 34:12,
  48:2, 52:23,
  53:16, 54:4,
  54:23, 57:1,
  59:1,
  60:24.
given 9:24,
  31:6, 54:1,
  56:25.
gives 7:21.
giving 30:10,
  30:24,
  53:18.
good-faith
  61:16.
Governs 5:7,
  10:13, 10:14,
  11:3, 11:14,
  17:12,
  17:13.
granted 29:25,
  56:18.
Green 35:25.
Grenade 35:17,
  35:18, 36:10,
  55:12.
grenades
  35:21.
guess 54:17,
  55:18,
  60:21.
guidance 5:8.
guide 7:19.
guilty 3:5.
gun 14:16,
  19:21, 45:21,
  56:5.
.
.
< H >.
happen 46:13,
  47:7, 47:8.
happened 19:12,

33:17,
51:25.
happening
43:24.
hate 29:19.
headquarters
33:15.
heads 45:10.
hear 2:19,
13:2, 34:7.
heard 42:15.
hearing 2:15,
2:21, 25:13,
51:4.
help 21:10.
hereby 62:13.
hesitation
32:9.
high-level
16:21.
highlighting
26:10.
Hill 46:16.
history 2:25.
hits 18:1.
hoc 17:10.
home 37:12,
58:5.
Honorable
1:18.
horrible
45:15.
hour 51:4,
51:9.
House 47:19.
Hunter 37:4,
39:19, 39:20,
57:20.
hypothesize
17:4.
hypothetical
25:23,
32:1.
hypothetically
25:18.
hypotheticals
46:5, 47:2.
.
.
< I >.

identical
12:18.
III 41:4,
43:11.
imagine 16:4.
immediately
25:12,
60:21.
imposed
59:20.
imposition
30:16.
inartfully
16:25.
inclined
60:11.
include 8:21,
8:23, 9:2,
11:4, 26:16,
31:17.
included 34:22,
35:18.
includes 15:20,
15:24, 15:25,
22:4, 23:5,
25:7, 25:19,
30:3, 30:4,
44:21.
including
21:25.
incorrectly
56:7.
indicated
3:7.
indicating
3:2.
indictment
44:6,
44:18.
individuals
13:6, 13:8,
13:19, 14:4,
31:8.
informally
51:3.
information
36:4, 36:10,
37:8, 44:7,
44:18, 55:12,
58:18.

informed 23:18,
23:23, 56:15,
58:17.
informing
51:1.
informs 11:20,
21:14.
inherently
30:15.
injured
46:18.
inquiry
58:16.
instance
55:19.
instances 30:7,
30:8, 32:12,
47:15.
intended 9:19,
40:1, 40:2,
45:6, 46:2,
47:14.
intention 10:5,
17:11,
17:13.
interested
24:9.
interesting
25:16.
interpret 7:23,
18:5, 30:2,
39:6, 40:10,
40:12, 40:17,
40:23, 41:13,
42:14, 43:11,
50:3, 53:12,
55:4.
interpret-
53:20.
interpretations
30:23.
interpreted
43:4,
43:23.
interpreting
20:23, 28:15,
29:8, 29:15,
38:19, 42:17,
49:5.
interpretive

28:10, 30:10,
46:25, 47:10,
48:4,
48:19.
interprets
7:20.
intervening
4:4.
invariably
9:25.
investigation
6:3, 14:19,
22:5, 22:6,
22:10, 23:3,
23:6, 23:17,
23:19, 23:25,
24:4, 24:23,
25:9, 27:6,
31:18, 32:24,
33:12, 33:22,
34:19, 37:19,
50:6.
Investigations
9:12, 37:18,
58:19.
invite 25:11.
involved 42:7,
42:8.
involving 19:2,
36:14,
40:9.
issue 7:8,
7:10, 9:19,
38:18, 40:8,
40:21, 41:15,
42:2, 43:19,
46:3, 54:15,
56:11, 57:4,
60:8,
61:16.
issued 6:21,
11:23, 17:17,
39:8, 39:15,
39:18, 40:12,
46:22,
47:14.
issues 7:7,
7:12.
itemizing
53:21.

items 22:12,
  33:23,
  37:18.
itself 11:11,
  11:12, 14:1,
  14:9, 14:10,
  17:25,
  56:11.
.
.
< J >.
J6th 58:15.
Jennifer 1:25,
  2:6.
Jeremy 35:9,
  46:17, 51:20,
  55:24.
Jill 41:23.
job 27:20,
  28:6,
  29:14.
judges 55:20.
judicial 18:4,
  18:7, 29:23,
  38:22,
  53:15.
jury 33:2,
  35:14.
Justice 2:19,
  39:19,
  45:5.
.
.
< K >.
keep 29:19.
Keepers
  42:23.
Kelly 27:16,
  32:11, 32:18,
  33:8,
  36:13.
Kentucky 4:14,
  8:18, 8:22,
  14:17, 20:1,
  33:4, 38:10,
  40:3, 44:21,
  45:21,
  56:5.
kind 12:21,
  33:10,

37:17.
Kisor 34:11.
knowing
  25:23.
knowledge
  27:10,
  55:9.
known 58:18.
.
.
< L >.
L. 1:25.
lapsed 7:8.
laptops 27:5,
  27:11.
large 20:12.
last 3:5,
  31:24,
  34:7.
later 17:17,
  51:14.
law 3:16,
  14:23, 20:19,
  20:20.
leader 17:2.
leads 16:12,
  33:24.
least 5:19,
  19:15, 23:18,
  46:10, 60:12,
  61:10.
leave 26:20.
leaving
  39:18.
led 14:24.
legal 6:20.
length 61:8.
less 23:23.
level 34:1,
  34:9.
light 5:7.
likelihood
  60:16.
limit 22:7,
  37:11, 46:7,
  46:8.
limited
  23:18.
line 25:16,
  34:11.

linking
  25:19.
list 18:14.
litigating
  54:21.
little 12:22,
  24:8, 29:22,
  42:1.
located 3:16,
  22:18.
location
  5:20.
long 34:5,
  60:12, 60:17,
  60:22.
longer 39:22,
  40:11, 40:18,
  40:24, 41:14,
  49:22.
look 8:7,
  30:18, 46:9,
  49:8,
  57:20.
looking 7:16,
  7:22, 10:7,
  16:2, 17:14,
  29:12, 30:2,
  54:12,
  54:13.
loose 6:19,
  45:9.
lot 56:20.
.
.
< M >.
machine 1:49.
Madison
  57:14.
male 24:12.
man 39:7,
  40:2.
Marbury
  57:14.
mass 45:15.
material
  23:21.
materials
  24:14.
matter 5:22,
  9:21, 19:13,

23:3, 59:24,
  62:15.
mean 6:16,
  7:12, 8:9,
  10:7, 11:16,
  13:24, 17:25,
  19:8, 21:20,
  22:22, 24:5,
  25:11, 27:1,
  28:5, 28:6,
  29:9, 29:13,
  29:24, 33:3,
  37:16, 48:18,
  50:23, 56:13,
  57:21, 58:10,
  58:11, 61:2,
  61:10, 61:15,
  61:17.
meaning 6:14,
  6:16, 6:20,
  10:8, 11:20,
  17:6, 17:7,
  17:8, 17:19,
  17:21, 17:22,
  17:23, 21:12,
  22:3, 26:6,
  26:23, 27:24,
  27:25, 38:4,
  42:19, 51:12,
  51:13, 51:15,
  52:6,
  52:25.
means 6:1,
  16:16, 16:24,
  17:18, 22:4,
  39:12, 60:14,
  60:16.
meant 8:20,
  21:20, 45:23,
  49:16.
mechanical
  18:1.
Mehta 30:1,
  39:1, 42:4,
  42:7, 42:14,
  42:19, 42:21,
  42:24.
Miami 1:36.
Middle 34:22,
  35:10.

military
  35:24.
minimal
  45:14.
minor 27:10.
minute 28:21,
  52:14,
  52:15.
misdemeanor
  45:14.
misdemeanors
  36:1.
missed 12:9.
missing 22:1.
mistake
  43:10.
misunderstood
  40:16.
modify 23:4,
  39:5, 43:12,
  43:17, 43:18,
  43:20.
modifying
  43:21.
moment 2:13,
  13:3, 29:2,
  40:15,
  59:14.
months 17:17.
morning 2:8,
  2:9, 2:10,
  2:12, 4:6,
  12:4, 12:5,
  12:6.
motion 2:16,
  2:18, 2:20,
  2:25, 3:9,
  15:1, 15:9,
  15:18, 55:22,
  60:9,
  60:25.
motions
  51:11.
Motions Hearing
  1:17.
mouth 7:25.
MS 2:8, 2:9,
  4:4, 13:3,
  13:15, 15:19,
  25:11, 26:1,

27:22, 28:22,
  44:20, 45:22,
  47:17, 48:23,
  51:22, 55:18,
  58:17, 59:5,
  59:15,
  62:7.
multiple
  30:23.
murder 18:15,
  18:16, 19:2,
  19:6, 19:7,
  25:20, 26:18,
  45:15.
myself 29:19.
.
.
< N >.
name 28:20,
  42:11.
namely 49:9.
narrow 12:11,
  45:3.
narrower
  12:22.
national 37:7,
  55:12.
nature 49:8.
near 4:12,
  8:11, 12:17,
  14:15, 14:18,
  21:22.
nearly 56:4.
necessarily
  18:6,
  48:18.
need 16:20,
  17:24, 20:20,
  21:2, 27:25,
  30:21, 33:13,
  44:1.
needed 18:7.
needing
  51:14.
needs 2:21,
  8:16.
new 7:8, 7:10,
  10:4, 43:19,
  44:1, 46:3.
next 51:4,

54:20,
  55:1.
No. 1:5, 8:9,
  20:18,
  51:10.
Nobody 57:12,
  57:22.
Nodding.
  58:21.
nor 45:16.
North 22:16,
  32:10.
note 27:15,
  41:11,
  49:1.
noted 3:11.
notes 49:15.
notice 60:21,
  60:22,
  61:5.
noticed 12:7.
notwithstanding
  30:15.
number 20:12.
numbers 22:1.
NW 1:45.
.
.
< O >.
Oath 42:23.
Obama 41:1,
  41:13.
object 61:21,
  61:24.
obvious
  61:16.
occurred 4:12,
  8:11, 8:14,
  9:12, 12:16,
  14:15, 14:17,
  21:22.
of. 13:6,
  13:19.
offense 8:16,
  8:17, 14:17,
  19:1, 39:8,
  45:14, 53:21,
  60:2.
offenses.
  13:9.

offer 48:5,
  48:23.
offering
  49:16.
Office 1:26,
  39:18, 42:18,
  58:19.
officer
  35:25.
officers 18:24,
  44:4.
Official 1:42,
  62:19.
once 49:18.
one 2:13, 4:5,
  5:15, 5:19,
  17:11, 19:1,
  22:16, 28:14,
  32:10, 36:17,
  37:18, 39:15,
  40:22, 42:9,
  45:18, 47:23,
  50:18, 59:14,
  61:18.
ones 26:10.
open 21:12.
opine 42:19.
opinion 38:25,
  39:1, 41:12,
  41:24, 42:5,
  60:8.
oppose 3:8,
  15:1.
opposed 2:20,
  9:20, 13:17,
  25:14,
  34:16.
opposite 14:8,
  54:20.
order 2:16,
  3:1, 3:22,
  12:12, 18:3,
  18:9, 18:12,
  28:25, 49:3,
  52:20, 54:4,
  54:8, 60:1,
  60:6, 60:11,
  60:17,
  62:3.
ordered 8:19.

ordering
  18:4.
ordinary
  29:10.
others 4:10,
  10:5, 26:16,
  55:11.
Otherwise
  55:23.
ourselves
  30:16.
outer 46:7,
  46:8.
overarching
  17:19,
  21:9.
owed 29:3.
.
.
< P >.
p.m. 59:3,
  62:4,
  62:11.
page 15:8.
PALLAS 1:33,
  1:34, 2:11,
  12:20, 13:4,
  14:8, 14:20,
  24:11, 24:25,
  38:1, 44:14,
  45:18, 48:2,
  48:8, 48:15,
  49:14, 50:13,
  52:14, 57:16,
  60:10, 60:19,
  62:10.
papers 3:7,
  3:11.
pardoned 12:14,
  18:14, 18:23,
  25:17, 35:22,
  36:7, 37:22,
  38:8, 39:7,
  39:18, 40:9,
  40:23, 44:3,
  45:24, 46:15,
  46:17.
pardoning
  39:16,
  57:17.

pardons 3:10,
  9:24, 20:13,
  20:23, 21:2,
  37:21, 39:15,
  39:18,
  57:21.
part 9:14,
  22:9, 23:6,
  25:8, 25:18,
  27:5, 31:18,
  34:7, 39:4,
  39:11, 45:4,
  50:5.
parte 48:6,
  48:8,
  48:10.
particular
  24:20,
  26:5.
party 61:20.
patterns
  32:9.
Pause 2:14.
pending
  60:23.
people 18:12,
  20:12, 35:20,
  37:22, 45:9,
  45:13,
  46:21.
percent
  58:12.
perhaps 7:24,
  13:8,
  17:13.
period 44:18,
  45:21,
  61:13.
person 37:5,
  46:9.
perspective
  56:22.
photographs
  27:11.
phrase 9:16,
  26:11.
physically
  24:1.
pieced 54:5.
place 6:6,

6:10,
  21:25.
Plaintiff
  1:7.
pleadings
  53:6.
please 2:4,
  2:6.
pled 3:4,
  44:7.
plenary 38:16,
  38:19, 45:13,
  57:17.
plot 32:22.
podium 2:5.
point 7:13,
  44:15,
  60:5.
porn 27:4.
pornographer
  23:11.
pornography
  22:23, 22:25,
  23:11, 23:14,
  24:2, 24:18,
  24:20, 25:2,
  25:14, 37:8,
  55:7, 55:8.
positions 55:2,
  56:15.
possession
  4:14, 8:17,
  8:21, 14:16,
  33:4, 35:11,
  36:3, 36:9,
  36:10, 44:21,
  45:21,
  53:22.
possessor
  37:5.
posture 3:22,
  26:10,
  30:13.
postured 3:13,
  50:24,
  55:21.
potentially
  25:17.
pow- 37:25.
power 7:15,

29:22, 38:3,
  38:5, 38:16,
  43:18, 45:13,
  47:23, 48:13,
  56:19, 56:20,
  57:7,
  57:17.
pre 24:6.
pre-existing
  23:7, 23:9,
  23:19, 24:5,
  25:10, 25:13,
  31:19, 34:19,
  50:7, 55:9.
prescription
  37:3.
present 2:11,
  16:5.
presented 4:17,
  21:7, 50:17,
  55:24.
presidential
  3:10, 5:6,
  9:15, 10:1,
  10:12, 11:3,
  12:14, 17:3,
  19:16, 28:12,
  56:22,
  57:2.
presume 4:10.
pretty 8:10,
  9:9, 61:15.
print 13:11.
Prior 39:17,
  41:23.
prison 18:12,
  56:4, 56:9,
  56:10,
  60:1.
Prisons 2:17,
  29:4, 60:6.
probable
  58:6.
probably 23:23,
  60:20.
problem 16:17,
  28:1.
procedural
  2:24,
  59:23.

procedure
7:9.
proceeding
23:10, 23:13,
55:7, 55:8,
55:11.
Proceedings
1:49, 62:11,
62:15.
proceedings.
2:14.
process 59:16,
59:22,
59:25.
proclamation
12:15.
produced
1:49.
proffer 20:2.
program.
49:10.
prohibited
37:5.
proper 7:8,
17:20.
proposition
47:12,
47:13.
prosecuted
35:20.
prosecution
23:10,
23:13.
prosecutor
26:21,
47:17.
prospective
57:21.
Proud 42:23.
provide
50:11.
provided
34:17.
provides
17:22.
providing
54:19.
Pryor 28:14,
28:23, 29:1,
29:3, 29:9,

38:24, 39:3,
41:12, 41:17,
41:23, 41:24,
42:5, 48:25,
50:21,
50:23.
Pryors 41:23.
pull 12:9,
15:7.
pun 8:1.
purpose 49:9.
pursuant
3:20.
push 10:8,
54:17.
pushing 47:6,
47:9.
put 5:10, 7:25,
18:25.
putting
29:13.
.
.
< Q >.
qualifier
14:14,
25:7.
qualifiers
26:12.
question 6:8,
19:20, 38:3,
45:19, 49:24,
50:15,
57:25.
questioning
46:20,
46:22.
questions 21:2,
21:4, 59:9.
quickly 12:21,
13:1.
quite 5:20,
24:3.
.
.
< R >.
raise 59:18.
raised 32:1.
rather 9:6.
read 10:18,

12:21, 13:11,
49:7.
reading 11:3,
11:13, 41:16,
53:13.
real 11:20.
really 18:8,
28:10, 37:11,
45:23.
realm 30:14.
realtime
2:13.
reason 3:8,
47:15,
47:16.
reasonable
29:17, 30:6,
30:24, 31:9,
34:5, 34:12,
42:16, 43:6,
46:9, 46:23,
49:13, 50:3,
50:18, 50:23,
53:17, 53:18,
53:20,
54:9.
reasonableness
30:12, 30:14,
53:23, 54:19,
56:14.
recalculating
29:4.
recent 4:1.
recently 4:5,
30:1.
reconsider
49:18,
49:22.
record 2:2,
2:5, 12:7,
25:12, 62:4,
62:15.
recorded
1:49.
recourse
21:5.
referencing
12:19.
refine 53:3.
regard 50:11.

regardless
5:22.
regular 29:4.
regulation
29:8.
reinterpret
11:16.
reinterpretatio
n 9:20,
26:4.
relating 24:5,
25:10, 31:20,
40:22,
50:7.
relationship
14:5,
58:11.
release 18:11,
19:7, 30:5,
42:10,
42:25.
released 18:2,
56:4, 56:7.
releasing
18:3.
rely 18:7.
remember 30:3,
42:12.
Remind 11:24,
36:21.
rendered
49:19.
repeating
29:19.
report 2:17,
18:4, 60:6,
60:12,
60:17.
Reported
1:41.
Reporter 1:42,
62:19.
representative
39:25, 43:14,
49:15.
require
42:22.
requiring
2:17.
residence

22:19,
58:14.
respect 3:23,
4:13, 10:6,
16:7, 23:13,
29:14,
40:23.
respectfully
18:18.
responding
6:8.
response 2:25,
38:25.
restriction
5:20.
result 6:3,
15:21, 22:5,
22:7, 23:5,
25:8, 31:17,
35:21, 37:13,
50:4.
results
18:11.
return 60:1.
reversed 43:1,
43:3.
review 38:23,
39:5, 41:5,
45:16, 45:17,
57:13, 57:16,
57:17.
reviewed
41:2.
revision
54:5.
Rhodes 30:7.
Robertson 49:6,
49:8.
rogue 47:17.
role 17:20,
17:25, 18:2,
18:4, 18:13,
18:16, 28:10,
38:19, 46:25,
47:11, 48:4,
50:13,
53:15.
room 29:22.
row 37:23.
RPR 1:41,

62:13.
rule 60:15.
ruled 49:2.
.
.
< S >.
S. 1:26, 8:12,
35:9,
39:11.
says 8:14,
9:19, 11:24,
12:13, 13:6,
13:7, 13:16,
13:18, 15:15,
18:23, 19:6,
44:25, 45:25,
47:3, 50:21,
51:18,
58:4.
scenario 29:25,
60:15.
scheduled
2:21.
Schiff 17:2.
scope 39:21,
41:5.
scratching
45:9.
searching
58:7.
second 39:3.
second-line
19:24.
secondary
10:25.
security 37:7,
55:12.
seek 60:12,
61:17.
seemed 5:16,
43:8.
seems 6:13,
27:24.
seized 6:2,
15:21, 22:13,
23:11, 27:5,
33:23, 35:6,
37:18.
seizure 58:5.
send 48:25.

sense 54:9,
55:5.
sensing 7:24.
sentence 15:10,
29:4,
59:20.
sentenced
3:5.
separate 27:17,
32:21, 33:1,
33:4, 33:9.
separated 6:5,
6:9, 21:23.
serial 22:1.
seriously
44:14.
serve 56:5.
served 58:8.
set 5:19, 6:21,
7:12, 10:9,
15:10.
sexual 25:14,
55:9.
sexually
24:14.
shifting
26:24.
short 60:24.
shorthand
1:49.
shortly 60:8.
shouldn't
56:9.
show 21:7,
28:7.
shown 21:17.
sideways
13:12.
similar 21:8,
24:5, 25:10,
31:20, 32:8,
50:8.
similarly 3:11,
3:13,
56:25.
simply 41:13.
sitting 12:2,
45:3.
situated
3:11.

situation
24:12, 29:6,
39:14,
41:25.
situations
16:9.
six 21:25,
51:14.
solution
9:18.
someone 25:18,
37:12.
somewhere
16:23, 16:24,
51:13.
son 39:18.
Sorry 34:7,
35:1, 37:20,
45:12, 47:21,
48:7,
52:16.
sort 5:14,
5:20, 9:16,
14:21, 20:8,
26:10,
33:11.
sounds 10:22,
22:3, 30:22,
37:6, 46:24,
50:12.
speaking 16:14,
20:7, 26:7,
41:7, 52:24,
53:4.
Special 10:2,
58:19.
specific 44:16,
56:23.
Specifically
3:10, 49:1.
specifics
30:4.
Starting 2:4.
state 2:5.
stated 4:10,
51:6.
statement
47:10.
States 1:1,
1:5, 1:19,

1:43, 2:3,
  2:7.
statute 37:4.
statutory
  29:10, 30:10,
  43:8.
stay 46:4,
  60:11, 60:13,
  60:17, 60:21,
  60:23, 60:25,
  61:8, 61:13,
  61:18, 61:21,
  61:24.
stem 33:18.
stemmed 6:2,
  33:21,
  37:18.
stenographic
  62:14.
step 19:19.
stick 13:3.
stop 44:5.
Street 1:27.
strike 38:23,
  39:5.
strings 55:6.
strongly
  10:8.
struggle 25:25,
  55:18.
strung 54:2.
subject 26:4,
  29:21, 30:23,
  40:5, 60:5.
suggest 29:9,
  49:12.
suggesting
  7:24, 7:25,
  11:5,
  59:19.
suggests 33:11,
  49:8.
superseding
  44:18.
supervised
  30:4, 42:9,
  42:25.
supplement
  25:12, 59:3,
  62:3.

support 17:15,
  48:3.
Supreme 48:8,
  49:1.
Surely 54:24.
surprised
  53:3.
surrender
  59:12.
surrogate
  43:22, 47:4,
  47:25.
.
.
< T >.
T. 1:33, 1:34,
  1:41,
  62:18.
talked 28:14,
  32:10, 32:14,
  36:13.
Tarrio 46:16.
tasked 20:22.
Tennessee
  27:17, 32:11,
  33:16.
term 58:11.
terms 7:1,
  14:8, 17:17,
  34:1,
  37:12.
test 33:10.
text 8:10,
  10:14, 11:20,
  21:13, 21:14,
  34:14, 49:12,
  49:14, 49:23,
  53:10, 53:12,
  53:13.
texting
  24:13.
THE CLERK
  2:2.
themselves
  37:21.
they've 5:11.
thinking 42:24,
  46:5.
thinks 19:25,
  49:23.

though 6:5,
  18:22, 42:18,
  42:23,
  58:12.
thoughts
  59:1.
thousand
  31:8.
threat 36:14.
threaten 33:13,
  33:15.
three 3:1, 4:4,
  56:24.
tie 34:16.
Tied 21:21,
  34:18.
till 59:1.
timed 56:25.
to. 15:14.
today 4:7,
  5:25, 41:10,
  59:2, 62:4.
together 10:18,
  54:2, 54:3,
  54:6, 54:7,
  55:6.
tomorrow 2:18,
  60:6,
  60:17.
took 4:17,
  4:21, 9:25,
  22:2, 50:1.
tools 29:10,
  30:10,
  43:8.
Towman 28:25.
traditional
  30:10,
  43:8.
Transcript
  1:17, 1:49,
  62:14.
transcription
  1:50.
trial 33:2,
  35:15.
true 5:18, 9:8,
  16:5, 43:17,
  43:19.
Trump 8:1,

19:6, 25:17,
  31:16, 32:4,
  39:7, 39:24,
  39:25, 40:1,
  40:2, 40:14,
  42:17, 42:18,
  42:20,
  46:1.
trumps 10:24.
try 21:10.
trying 5:22,
  8:25, 27:23,
  46:6.
turn 48:22.
tweak 52:23.
two 9:15,
  10:19, 15:25,
  16:1, 30:7,
  30:8, 36:1,
  41:22, 48:5,
  50:11, 53:21,
  53:22.
.
.
< U >.
unaware 24:1.
unconstitutiona
  l 38:23.
uncover
  16:12.
uncovered
  14:23.
uncovers
  37:7.
underage
  24:13.
understand
  2:24, 5:23,
  6:22, 7:3,
  9:23, 10:21,
  13:23, 14:25,
  15:20, 17:2,
  20:7, 26:2,
  30:20, 31:9,
  31:10, 34:24,
  35:4,
  41:17.
understanding
  5:5, 5:9,
  5:15, 5:25,

7:1, 10:12,
22:18, 23:2,
23:22, 23:23,
23:24, 24:11,
24:22, 25:4,
27:5, 27:9,
28:11, 31:5,
31:12, 31:15,
32:3, 40:7,
56:21.
Understood
6:17, 16:14,
18:10,
56:12.
undertook
43:7.
unfortunately
23:17.
unique 26:10,
39:15.
uniquely
55:21.
United 1:1,
1:5, 1:19,
1:43, 2:3,
2:7.
Unless 16:3.
unlike 38:17.
unlimited
48:13.
unopposed
15:9.
unrelated 4:23,
33:16.
unusual
41:25.
uses 14:10.
using 30:9.
usurp 57:7.
.
.
< V >.
v. 29:11, 35:9,
49:6, 52:19,
57:14.
vacate 2:16,
15:10.
vacated 3:12.
vacuum 49:7.
vague 17:17.

value 44:22,
45:25.
vehicle 59:17,
59:23.
versus 2:3,
14:9,
53:15.
victim 24:20,
24:24,
25:3.
view 7:22,
8:20, 8:23,
11:15,
29:13.
viewed 30:1.
violated
57:10.
violates
57:4.
violation
59:17, 59:22,
59:25.
visibility
23:17.
vs 1:8.
.
.
< W >.
W. 1:27.
Wait 13:10.
walk 13:23.
wanted 39:19,
53:2.
wants 43:20,
48:23.
Warden 29:11,
52:19.
warrant 3:14,
3:15, 3:20,
6:3, 14:2,
14:6, 15:22,
16:10, 22:13,
23:12, 23:20,
33:8, 33:19,
33:22, 33:23,
35:7, 36:1,
36:22, 58:8,
58:15.
warrants 22:6,
22:8, 22:9,

23:6, 25:8,
31:18, 34:16,
34:18,
50:5.
Washington
1:11, 1:28,
1:46.
ways 38:6.
weapon 36:23.
weapons 22:1,
35:12,
35:14.
weeks 3:1, 4:5,
5:2, 21:21,
51:14,
56:24.
Western 4:14,
8:18, 8:22.
Westlaw 30:8.
whatever 44:18,
45:13.
whatsoever
48:4.
whether 3:16,
30:3, 30:4,
34:9, 42:2,
46:22, 51:6,
54:23,
57:9.
White 47:19.
will 7:14,
9:17, 9:24,
17:14, 22:15,
27:15, 29:18,
32:22, 33:16,
37:10, 53:2,
54:4,
54:17.
William 41:23,
41:24.
Wilson 2:3,
2:11, 3:13,
4:15, 4:18,
12:14, 15:9,
18:14, 18:23,
19:9, 19:11,
21:8, 21:24,
33:4, 35:6,
38:2, 38:9,
44:3, 44:7,

44:17, 45:19,
47:3, 56:4,
57:1, 58:5,
59:12, 60:5,
60:12,
60:16.
within 30:14.
without 18:12,
19:8, 21:12,
37:3.
woman 39:10.
wondering 4:25,
29:12.
word 9:9, 13:9,
14:10,
58:10.
words 7:25,
34:12,
39:14.
work 54:3,
54:7.
working 21:8.
worst-case
60:15.
writing
16:23.
written 45:8.
wrote 41:24,
42:6.
.
.
< X >.
X. 51:18,
51:19.
.
.
< Y >.
year 3:6.
years 19:2,
56:5,
57:22.
yesterday 3:8,
4:5.